**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00572-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00581-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00582-ADA** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

# Table of Contents

I.    Legal Standards ...............................................................................................1

      A.    Claim Construction Generally...............................................................1

      B.    Indefiniteness .......................................................................................2

II.   U.S. Patent No. 7,304,563 (Case No. 6:20-cv-00581).....................................2

      A.    Agreed Upon Constructions...................................................................2

      B.    Terms with Disputed Constructions........................................................3

            1.    "alert".........................................................................................3

            2.    "alerting unit configured to issue an alert" ................................4

            3.    "signaling unit configured to locally signal to a user"............6

            4.    "initiating [a/the] connection to the other communication
                  terminal at a predetermined time offset from [signaling the
                  user using the signaling unit/locally signaling the
                  users/signaling the user by the signaling means]" ...................7

            5.    "the terminal".............................................................................8

            6.    "issuing means for issuing an alert"...........................................9

III.  U.S. Patent No. 8,041,806 (Case No. 6:20-cv-00572 )........Error! Bookmark not defined.

      A.    Agreed Constructions ...............................................Error! Bookmark not defined.

      B.    Disputed Constructions .............................................Error! Bookmark not defined.

IV.   U.S. Patent No. 8,238,681 (Case No. 6:20-cv-00582-ADA)...........................18

      A.    Agreed Constructions ...........................................................................18

      B.    Disputed Claim Terms...........................................................................18

            1.    "autofocus algorithm" (Claims 1, 9, 16, and 24) .....................18

            2.    "second part in between the first part and the second part"
                  (Claims 1, 9, 16, and 24) ...........................................................20

            3.    "means for assigning a focus value mask to each of the
                  plurality of parts of the at least one sub-window" (Claim 24).............23

i

**4.**     **"a processor configured to …" (Claim 16)** ...............................................24

# TABLE OF AUTHORITIES

**Cases**

*Al-Site Corp. v. VSI Intern., Inc.*,
174 F.3d 1308 (Fed. Cir. 1999) ................................................................. 25

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
Case No. 110CV910LMBJFA, 2018 WL 1699429 (E.D. Va. Apr. 6, 2018) ......................... 16

*Azure Networks, LLC v. CSR PLC*,
771 F.3d 1336 (Fed. Cir. 2014) ................................................................. 1

*Cellular Comm'ns Equip. LLC v. AT&T, Inc.*,
Case No. 2:15-CV-576-RWS-RSP, 2016 WL 7364266 (E.D. Tex. Dec. 19, 2016) ............... 27

*Cellular Communs. Equip. LLC v. HTC Corp.*,
No. 6:16-cv-475. LEXIS 3759 (E.D. Tex. Jan. 8, 2018) ....................................... 5, 7

*Clear Imaging Research, LLC v. Samsung Electronics Co., Ltd.*,
Case No. 2:19-cv-00326-JRG, 2020 WL 6384731  (E.D. Tex. Oct. 30, 2020) ...................... 26

*Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc.*,
206 F.3d 1440 (Fed. Cir. 2000) ................................................................. 25

*CloudofChange, LLC v. NCR Corp.*,
No. 6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020) ........................ 1, 2

*Collaborative Agreements, LLC v. Adobe Systems Inc.*,
Case No. A–14–CV–356–LY, 2015 WL 2250391 (W.D. Tex. 2015) ................................ 16

*Comark Commc'ns, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998) ................................................................. 1

*Comark Comm'ns, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed.Cir.1998) ................................................................... 25

*Cont'l Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir.) ......................................................................... 11

*Crossroads Sys., (Texas), Inc. v. Chaparral Network Storage, Inc.*,
No. A 00 CA 217 SS, 2000 WL 35731852 (W.D. Tex. July 27, 2000) ............................ 15

*CXT Systems, Inc. v. Academy, Ltd.*,
Case No. 2:18-cv-00171-RWS-RSP, WL 4253841 (E.D. Tex. 2019) ............................... 16

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
382 F. Supp. 3d 586 (E.D. Tex. 2019) .......................................................... 26

*Fisher-Rosemount Systems, Inc. v. ABB Ltd*,

Case No. 4:18-CV-00178, 2019 WL 6830806  (S.D. Tex. Dec. 12, 2019) ............................ 27

*Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*,
   No. 2:16-cv-00052WL 1376436 (E.D. Tex. April 15, 2017) ................................. 5, 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ........................................................................................... 2, 20

*Phillips* v. *AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ........................................................................... 1, 19

*Realtime Data, LLC v. Rackspace US, Inc.*,
   No. 6:16-CV-00961 RWS-JDL, 2017 WL 2590195 (E.D. Tex. June 14, 2017) ..................... 27

*Samsung Elecs. Am. v. Prisua Eng'g Corp.*,
   948 F.3d 1342 (Fed. Cir. 2020) ........................................................................ passim

*Skky, Inc. v. MindGeek, s.a.r.l.*,
   859 F. 3d 1014 (Fed. Cir. 2017) ........................................................................... 5, 6

*Smith & Griggs Mfg. Co. v. Sprague*,
   123 U.S. 249 (1887) ............................................................................................. 25

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
   844 F.3d 1370 (Fed. Cir. 2017) ............................................................................... 2

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1369 (Fed. Cir. 2012) ........................................................................... 3, 8

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015) ................................................................. 4, 6, 15, 24

*Yodlee, Inc. v. Plaid Techs., Inc.*,
   Case No. 14-1445-LPS, 2016 WL 204372 (D. Del. Jan. 15, 2016) ......................... 16

## Statutes

35 U.S.C. § 112 ........................................................................................... passim

## Rules

37 CFR §1.72 ...................................................................................................... 19

MPEP §608.01(b) (8th ed. Rev. 7 July 2008) ......................................................... 19

Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development ("WSOU") respectfully submits this claim construction brief in support of its proposed constructions.

## I.    Legal Standards

### A.    Claim Construction Generally

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*)*, cert. denied*, 546 U.S. 1170 (2006); *Azure Networks, LLC v. CSR PLC,* 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips,* 415 F.3d at 1313. "'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant* v. *Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1571 (Fed. Cir. 1988)). Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips,* 415 F.3d at 1317 (quoting *C.R. Bard, Inc.* v. *U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed. Cir. 2004)).

This Court recently explained that "[t]he 'only two exceptions to [the] general rule' that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *2 (W.D. Tex. July 15, 2020) (quoting *Thorner v. Sony Computer*

*Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  "To act as his/her own lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *Id.* (quoting *Thorner,* 669 F.3d at 1365).  And "[t]o disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent 'a clear disavowal of claim scope.'" *Id.* (quoting *Thorner,* 669 F.3d at at 1366).  "Accordingly, when 'an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable.'" *Id.* (quoting *3MInnovative Props. Co.* v. *Tredegar Corp.,* 725 F.3d 1315, 1326 (Fed. Cir. 2013)).

### B.  Indefiniteness

The Patent Act requires claims to particularly point out and distinctly claim the subject matter regarded as the inventions. 35 U.S.C. § 112, ¶ 2. To satisfy this requirement, the claim must be read in light of the intrinsic evidence to determine whether it informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910-11 (2014). To establish that a claim is indefinite, a patent challenger must prove indefiniteness by clear and convincing evidence. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## II.  U.S. Patent No. 7,304,563 (Case No. 6:20-cv-00581)

### A.  Agreed Upon Constructions

| Term | Agreed Upon Construction |
|---|---|
| "maintaining means for maintaining an indication of the current time" | Term is subject to 35 U.S.C. § 112, ¶ 6<br><br>Function: maintaining an indication of the current time<br><br>Structure: a clock, and equivalents thereof. '563 patent, 1:49-51, 2:3-4, 3:29-31, 6:39. |
| "storing means for storing in a memory a | Term is subject to 35 U.S.C. § 112, ¶ 6 |

2

| definition of an alert time" | |
|---|---|
| | Function: storing in a memory a definition of an alert time<br><br>Structure: a processor, a memory, and equivalents thereof. '563 patent, 1:51-52, 1:59-61, 3:43-44, 3:58-60. |
| "signaling means" | Term is subject to 35 U.S.C. § 112, ¶ 6<br><br>Function: locally signal to the user<br><br>Structure: loudspeaker, and equivalents thereof. '563 patent, 2:57-58, 4:4-8. |

### B.   Terms with Disputed Constructions

#### 1.   "alert"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "instructions causing a communication terminal to perform an action" |

This term should be given its plain and ordinary meaning. Defendant's proposed construction is confusing, and Defendant's proposed construction should be rejected for improperly importing limitations not required in the claims or specification. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1369 (Fed. Cir. 2012) ("Absent disclaimer or lexicography, the plain meaning of the claim controls."). Defendant's proposed construction seeks to require the term "alert" to be "instructions," but there is no such requirement in the claims or the specification. In fact, the words "instruction" and "does not appear anywhere in the '563 patent and there is nothing in the specification that describes an alert being instructions to perform an action. Indeed, on its face, Defendant's proposed construction not only improperly imports limitations not required in the claims or specification but is at the same time overbroad.  Defendant proposes that any "instructions causing … an action" is an "alert." The result is nonsensical in situations where an instruction to turn off the terminal or silencing all alarms would be an "alert" under Defendant's

3

proposed construction.

Instead, as the specification discloses, an "alerting device" provides an alarm, such as through a loudspeaker, or a light, or a vibrating unit, or some other means. '563 patent, 4:4-8. The term "alert" does not require construction and the specification and claims repeatedly provides the full context for the term, such as through examples of "issuing an alert," including "issuing an alert by the terminal locally signaling to the user." *See e.g.*, '563 patent, 2:9-10, 5:55-58 (claim 1), 6:47-48 (claim 12), 7:8-10 (claim 16).

### 2. "alerting unit configured to issue an alert"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | The recited function is identical to the means-plus-function term in claim 16 (*see* no. 6 below). [1] Thus, the only issue is whether this term invokes Section 112 ¶ 6. |

This term should be given its plain and ordinary meaning. Because this term does not contain the words "means for," there is a rebuttable presumption that section 112, paragraph 6, does not apply to that limitation. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (en banc). That presumption can be overcome, but only "if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* at 1349. The question whether the term "alerting unit configured to issue an alert" invokes section 112, paragraph 6, depends on whether persons skilled in the art would understand the claim language to refer to structure, assessed in light of the presumption that flows from the drafter's choice not to employ the word "means."'" *Samsung Elecs. Am. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1354 (Fed. Cir. 2020); *Skky,*

---

[1] WSOU believes Defendant refers to the term "issuing means for issuing an alert" in Claim 16, (see Section II.B.6, below).

*Inc. v. MindGeek, s.a.r.l.*, 859 F. 3d 1014, 1019 (Fed. Cir. 2017) ('To determine whether a claim recites sufficient structure, "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function."').

Here, a person of skill in the art would understand the claim language to refer to structure, especially given that the claims provide that the "alerting unit comprises a signaling unit" (*see* '563 patent, 5:55), and the specification provides certain exemplary embodiments where the specification provides a "Mobile phone 1 comprises a central processor unit 10" ('563 patent, 3:21), and processor 10 compares the real-time clock with the an alarm stored in memory 21, and when the clock matches the entered time and optionally date, the processor activates an alarm, such as by causing the loudspeaker 14 to emit a noise. (*Id.*, 3:58-67). Further, the specification provides for a second type of alarm where "the processor generates the alarm of the second type by calling the telephone number." *Id.*, 4:18-20. This term is not subject to 35 U.S.C. § 112 ¶ 6. *See e.g., Prisua Eng'g Corp.*, 948 F.3d at 1354 (Board erred in determining that the term "digital processing unit" was a means-plus-function limitation since the evidence showed that the term was a structural term similar to a "general purpose computer" and not a functional term); *Cellular Communs. Equip. LLC v. HTC Corp.*, No. 6:16-cv-475. LEXIS 3759 (E.D. Tex. Jan. 8, 2018) (holding that 'control unit' is not a means-plus-function limitation because the control unit connotes sufficiently definite structure to one of skill in the art); *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc*., No. 2:16-cv-00052WL 1376436, *15-*17 (E.D. Tex. April 15, 2017) (ruling that the terms "receiving unit," "sending unit," and "storage unit" were not means-plus-function limitations).

5

### 3.    "signaling unit configured to locally signal to a user"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | The recited function is identical to the means-plus-function term in claim 16,[2] and thus the only issue is whether this term invokes Section 112 ¶ 6 |

This term should be given its plain and ordinary meaning. Because this term does not contain the words "means for," there is a rebuttable presumption that section 112, paragraph 6, does not apply to that limitation. *Williamson*, 792 F.3d at 1348. That presumption can be overcome, but only "if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id*. at 1349. The question whether the term "signaling unit configured to locally signal to a user" invokes section 112, paragraph 6 depends on whether persons skilled in the art would understand the claim language to refer to structure, assessed in light of the presumption that flows from the drafter's choice not to employ the word "means."" *Prisua Eng'g Corp*., 948 F.3d at 1354; *Skky*, 859 F. 3d at 1019 ('To determine whether a claim recites sufficient structure, "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function."').

Here, a person of skill in the art would understand the claim language to refer to structure, especially given that the specification provides certain exemplary embodiments where the specification provides a "Mobile phone 1 comprises a central processor unit 10" ('563 patent, 3:21), and processor 10 compares the real-time clock with the an alarm stored in memory 21, and

---

[2] WSOU believes Defendant refers to the term "signaling means" in Claim 16, which the parties have an agreed upon construction (see Section II.A, above)

when the clock matches the entered time and optionally date, the processor activates an alarm, such as by causing the loudspeaker 14 to emit a noise. (*Id.*, 3:58-67). Further, the specification recites "[p]referably, the said signaling is audible signaling. Preferably the audible signaling is a ringtone." *Id.*, 2:57-58. And in an exemplary embodiment, the specification demonstrates various ways to signal locally, such as "means of the loudspeaker" or "by means of a light or vibrating unit or by another form of local alerting device if the phone were so equipped" *Id.*, 4:4-8. This term is not subject to 35 U.S.C. § 112 ¶ 6. *See e.g. Prisua Eng'g Corp.*, 948 F.3d at 1354 (Board erred in determining that the term "digital processing unit" was a means-plus-function limitation since the evidence showed that the term was structural term similar to a "general purpose computer" and not a functional term); *Cellular Communs. Equip. LLC v. HTC Corp.*, No. 6:16-cv-475. LEXIS 3759 (E.D. Tex. Jan. 8, 2018) (holding that 'control unit' is not a means-plus-function limitation because the control unit connotes sufficiently definite structure to one of skill in the art); *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052WL 1376436, *15-*17 (E.D. Tex. April 15, 2017) (ruling that the terms "receiving unit," "sending unit," and "storage unit" were not means-plus-function limitations).

4.      **"initiating [a/the] connection to the other communication terminal at a predetermined time offset from [signaling the user using the signaling unit/locally signaling the users/signaling the user by the signaling means]"**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "initiating a link that allows direct communication between a mobile communication terminal and another predefined communication terminal at a time set apart by a predefined interval from the local signal" |

This term should be given its plain and ordinary meaning. Defendant's proposed construction is confusing and unhelpful, and Defendant's proposed construction should be rejected

for improperly importing limitations not required in the claims or specification. *Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls.").

Defendant's proposed construction seeks to import limitations not required or even recited anywhere in the claims or specification, such as "direct communication" and "predefined communication terminal." Furthermore, the claims and specification show that "initiating a connection" does not require a "direct connection," indeed the word "direct" does not appear anywhere in the specification or claims, for example, the specification recites "**[p]referably**, the said connection to another communication terminal is a phone call." '563 patent, 2:29-30. And as another example, the specification states that **preferably**, the said connection is communicated over a wireless link with the network. *Id.*, 2:31-34. In each case, there is no requirement that the connection be "direct," only that a connection be made. Moreover, the claims themselves recite that the connection is initiated to "another communication terminal," and that is all that is required. *See e.g. Id.*, 5:50-52 (claim 1), 6:43-44 (claim 12), 7:2-3 (claim 16). And nothing in the specification requires anything more. Defendant's attempt to import "predefined" into the plain language of the claims should also be rejected.

Furthermore, it is unclear what a "predefined interval" refers to, for example, whether the entire "interval" must be accounted for or if acknowledging an endpoint is enough. In other words, it is unclear how Defendant intends "interval" to differ from "offset" and it is further unclear how Defendant intends "predefined" to differ from "predetermined." At best, Defendant seems to attempt to re-phrase the plain language of the claim term, but doing so only introduces confusion and ambiguity.

### 5. "the terminal"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite |

8

This term should be given its plain and ordinary meaning. Defendant identifies this term as the one appearing in Claim 12. The full claim term is "the terminal locally signaling to the user." '563 patent, 6:47-48. The language of Claim 12 is clear that "the terminal" derives its antecedent basis from "another communication terminal," where a connection is initiated with "another communication terminal so as to cause that other terminal to locally signal the incidence of the connection incoming thereto." *Id.*, 41-45. And in the immediately following claim element, "issuing an alert by <u>the terminal locally signaling to the user</u>." *Id.*, 46-47 (emphasis added). In other words, the claim language expressly gives context to "the terminal" by providing that it is "the terminal locally signaling to the user," which derives its antecedent basis from the claim element immediately above, specifically, "another communication terminal." And for the recitation of "the terminal" in the "storing" claim element that follows immediately after (*Id.*, 6:49-50), the context of the claim language again shows "the terminal" there also derives its antecedent basis from "another communication terminal." Specifically, that claim element recites "storing an indication in <u>the memory</u> of whether the alert is to be <u>issued locally by the terminal</u>." *Id.* (emphasis added). Here, "the memory" derives its antecedent basis from "a memory" of "a mobile communication terminal" (*see Id.*, 6:37-40), but for "the terminal," the claim language provides the context that because "the alert is to be <u>issued locally</u> by the terminal," again "the terminal" derives its antecedent basis from the same "another communication terminal" recited earlier in Claim 12.

6.     **"issuing means for issuing an alert"**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Term is subject to 35 U.S.C. § 112, ¶ 6<br><br>Function: issuing an alert<br><br>Structure: antenna, communication engine, | This term is subject to means-plus-function treatment under 35 U.S.C. §112(f).<br><br>Function: issuing an alert |

9

| and loudspeaker, and equivalents thereof | Structure: none (indefinite) |
|---|---|

The parties agree that this term is subject to 35 U.S.C. § 112, ¶ 6. The parties agree that the recited function is: "issuing an alert." The parties have a dispute regarding the corresponding structure recited by the specification. Claim 16 recites an "issuing means for issuing an alert when the current time matches the alert time by initiating a connection to another communication terminal over a network…" ('563 patent, 7:1-5), and also recites "wherein the means for issuing an alert comprises signaling means for locally signaling to the user" (*Id.*, 7:6-7). An in an exemplary embodiment, the specification discloses:

> "[t]he mobile phone also has a communication subsystem 18 for communicating with a mobile telephony network. The communication subsystem comprises **antenna 19 and a communication engine 20**. The communication engine 20 is connected between the antenna and the processor 10. <u>The communication engine handles conversion between base-band and radio frequency and handles signalling communications with the wireless network</u>. At least some functional elements of the communication engine may be implemented on a common chip with one or more parts of the central processing unit."

*Id.*, 3:32-42 (emphasis added).

Furthermore, for locally signaling to the user, the specification recites "[p]referably, the said signaling is audible signaling. Preferably the audible signaling is a ringtone." '563 patent, 2:57-58. And in an exemplary embodiment, the specification discloses various ways to signal locally, such as "means of the loudspeaker" or "by means of a light or vibrating unit or by another form of local alerting device if the phone were so equipped" *Id.*, 4:4-8.

Accordingly, **the correct corresponding structure is "antenna, communication engine, and loudspeaker, and equivalents thereof**."

III.     **Terms of U.S. Patent No. 8,041,806 (Case No. 6:20-cv-00572-ADA)**

A.  **Disputed terms of the '806 patent which only Google seeks to construe.**

1.  **"communication traffic exchanged with a communication network subscriber over an access communication link"**

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "the digital information traversing a network link between a communication network subscriber and an access network" |

The phrase "communication traffic exchanged with a communication network subscriber over an access communication link" (recited in all independent claims 1, 9, 10, 11, and 14 of the '806 patent) is plain on its face and requires no construction.  Google runs afoul of the fundamental canon that adding limitations neither required by claim terms nor unambiguously required by either the specification or the prosecution history of a patent is impermissible.  *See*, *e.g.*, *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796–97 (Fed. Cir.), *cert. denied*, 140 S. Ct. 648 (2019); *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001).  Specifically, Google errs at least in (1) seeking to unduly restrict "communication traffic" to "digital information" only and by (2) attempting to rewrite "exchanged with a communication network subscriber over an access communication link" as, instead, "traversing a network link between a communication network subscriber and an access network."

Nothing in either the claim language or the remainder of the intrinsic evidence unambiguously restricts "communication traffic" to "digital information" only, to the exclusion of all other possible forms of "communication traffic."  That the claimed "communication traffic" encompasses multiple "types" is made explicit at least by the reference in the '806 patent specification to "one *or more* particular types of the monitored communication traffic." '806 patent, 2:64–65.  In the very next sentence, the specification states "[w]here the monitored communication traffic includes packet traffic," which confirms that the "communication traffic"

11

does not necessarily include packet traffic.  *Id*., 2:66–67.  Google's extraneous couplet, "digital information" appears nowhere in the specification of the '806 patent, much less as an unambiguous requirement expressly restricting the "communication traffic" term.

Google compounds its error in attempting to rewrite "exchanged with a communication network subscriber over an access communication link" as, instead, "traversing a network link between a communication network subscriber and an access network."  Notably, Google does not seek to define "a communication network subscriber" and rather acknowledges, by its proposed construction, that this claim element should be afforded its plain and ordinary meaning.  Google seems primarily interested in restricting "an access communication link" in terms of type and location—i.e., "a *network* link *between a communication network subscriber and an access network*."  It is significant here that the terms "network link" and "access network" are both recited in each independent claim 1, 9, 10, 11, and 14.  Had the applicant intended to restrict the "access communication link" in the manner Google proposes, the applicant would have said so.  It did not.

The unduly narrow nature of Google's proposal may be further explained with reference to Figure 1 of the '806 patent, reproduced below (with red annotations added thereto).



'806 patent, Fig. 1 (red annotations added).  As shown by the red annotations above to Fig. 1 of

the '806 patent, Google seeks to unduly restrict the claimed "access communication link" by

requiring it to be located "*between* a communication subscriber and an access network."  For

illustrative purposes, this narrowed location may be represented as the dotted-red arrow between

Subscriber 12 and Access Communication Network 16.  Such a construction would appear to

exclude the possibility, for example, that the "access communication link" be located somewhere

*within* Access Communication Network 16 of Figure 1, though not necessarily *directly* connected

to Subscriber 12.  That the claim scope should be interpreted as encompassing at least this

possibility is made explicit by the recition "the access communication link comprises *a network*

*link in an access network*," which is recited in *all* independent claims 1, 9, 10, 11, and 14.

Accordingly, for this additional and independent reason, Google's construction should also be

rejected as unduly restricting claim scope in a manner inconsistent with the claim language itself.

### 2. "access network"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "a network that connects a communication network subscriber to their Internet Service Provider (ISP)" |

The phrase "access network" (recited in all independent claims 1, 9, 10, 11, and 14 of the '806 patent) is plain on its face and requires no construction. Google appears to inject a dispute over this term to reassert its gambit to restrict claim scope to what is shown in red annotations to Fig. 1 above. Specifically, Google seeks to rewrite "access network" as, instead, "a network that connects a communication network subscriber to their Internet Service Provider (ISP)." As explained above (in addressing the phrase "communication traffic exchanged with a communication network subscriber over an access communication link"), nothing in the intrinsic evidence unambiguously requires Google's fundamental rewrite; and, quite the contrary, the claim language itself proscribes restricting claim scope in the manner Google proposes. Nothing in Fig. 1 or its corresponding written description requires that the "access network" must be one that connects Subscriber 12 to an Internet Service Provider (ISP). Indeed, "Internet Servicer Provider" or "ISP" is not expressed anywhere in the '806 patent, much less as an unambiguously-required claim element. Even if one were to suppose that a connection from a subscriber to an ISP could possibly occur along what is indicated by the red-arrow annotation to Figure 1 above, Figure 1 itself refutes the interpretation that the claimed "access network" must *itself* be so restricted.

Accordingly, for analogous reasons to those discussed above (in addressing "communication traffic exchanged with a communication network subscriber over an access communication link"), Google's construction should also be rejected as unduly restricting claim scope in a manner inconsistent with the intrinsic evidence.

14

### 3. "a behavioral information collector operable to monitor communication traffic exchanged with a communication network subscriber over an access communication link"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** "monitor communication traffic exchanged with a communication network subscriber over an access communication link"<br><br>**Structure:** none (indefinite) |

Google errs in seeking to construe "a behavioral information collector operable to monitor communication traffic exchanged with a communication network subscriber over an access communication link" as expressing nothing more than nonce terms and invoking means-plus-function under 35 U.S.C. § 112, ¶ 6.

Lack of the word "means" in the disputed phrase raises a rebuttable presumption against applying Section 112, ¶ 6. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (*en banc*).  While the burden lies with Google to rebut the presumption, it failed to advance any argument or evidence in its Invalidity Contentions (or in its disclosure of extrinsic evidence) as allegedly rebutting, or even addressing, the presumption against applying Section 112, ¶ 6 here.

Google errs in also failing to recognize that the claim language at issue is not purely functional, but rather recites specific structure ("a behavior information collector") that can perform a task set forth in the claim language itself ("operable to monitor communication traffic exchanged with a communication network subscriber over an access communication link").  The Court has found sufficient structure in considering analogous claim language.  *See Crossroads Sys., (Texas), Inc. v. Chaparral Network Storage, Inc.*, No. A 00 CA 217 SS, 2000 WL 35731852, at *4 (W.D. Tex. July 27, 2000) ("From a review of the claim language as a whole, the Court

agrees with the plaintiff that the term 'supervisor unit' is not purely functional, but refers instead to a device that can perform the tasks specifically listed in the claim language of the ′972 patent."); *see also Collaborative Agreements, LLC v. Adobe Systems Inc.*, Case No. A–14–CV–356–LY, 2015 WL 2250391, *12–*14 (W.D. Tex. 2015), *denying reconsideration after transfer*, Case No. 15-cv-03853-EMC, 2015 WL 7753293, *4–*8 (N.D. Cal. Dec. 2, 2015) (finding "code-segment" had sufficient structure to avoid being treated as a means-plus-function limitation).

The term "collector" repeatedly has been found to connote sufficiently definite structure in the context of computing arts.  For example, in *CXT Systems, Inc. v. Academy, Ltd.*, Case No. 2:18-cv-00171-RWS-RSP, WL 4253841, *11-*12 (E.D. Tex. 2019), the court declined to adopt a means-plus-function construction, and rather found sufficient recited structure in "claims [that] are directed to computer-implemented processes that manage *and collect certain consumer information elements* and then pass them on 'for processing' …."  In *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, Case No. 110CV910LMBJFA, 2018 WL 1699429, at *9 (E.D. Va. Apr. 6, 2018), the parties agreed that a "data collector" claim term did not invoke means-plus-function construction, though the parties disputed whether *other* claim terms did.  Similarly, in *Yodlee, Inc. v. Plaid Techs., Inc.*, Case No. 14-1445-LPS, 2016 WL 204372, at *17 (D. Del. Jan. 15, 2016), the court construed the terms "collection function" and "collector function" as "software component that uses" the specific functionality claimed.  In each of the above matters, the opposing parties, and ultimately the court, all agreed that "collector" does not invoke means-plus-function construction in the context of computing.

Under the circumstances, and in the absence of Google having timely disclosed any expert testimony to conclude otherwise, the presumption against application of a Section 112, ¶ 6 to the disputed phrase "a behavioral information collector operable to monitor communication traffic

exchanged with a communication network subscriber over an access communication link" stands unrebutted.

   4.  **"the behavioral information collector being configurable to collect from any of a plurality of types of communication traffic in the monitored communication traffic behavioral information indicative of behavior of the subscriber in using the access communication link", "the behavioral information collector operable to . . . collect from the monitored communication traffic behavioral information indicative of behavior of the subscriber in using the access communication link", and "the behavioral information collector being configurable to collect the behavioral information from any of a plurality of types of communication traffic in the monitored communication traffic"**

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** "collect from any of a plurality of types of communication traffic in the monitored communication traffic behavioral information indicative of behavior of the subscriber in using the access communication link"<br><br>**Structure:** none (indefinite) |

   It is unclear whey Google opted to group together three other "behavior information collector" terms, and then challenge them all under the exact same indefiniteness theory as term no. 3 addressed above (i.e., "a behavioral information collector operable to monitor communication traffic exchanged with a communication network subscriber over an access communication link"). For each one of the four disputed "behavior information collector" terms, Google offers the same conclusory position—namely, that each term invokes Section 112, ¶ 6 and is allegedly indefinite as lacking any corresponding structure.

   The reasoning set forth above in addressing term no. 3 applies equally for those three additional terms Google groups together as term no. 4. Under the reasoning set forth above, and in the absence of Google having timely disclosed any expert testimony to conclude otherwise, the presumption against application of a Section 112, ¶ 6 stands unrebutted for those additional three

"behavior information collector" terms, which Google grouped together as "term" no. 4.

## IV.    U.S. Patent No. 8,238,681 (Case No. 6:20-cv-00582-ADA)

### A.    Agreed Constructions

The parties agree to the following claim constructions:

| Claim Term | Agreed Construction |
|---|---|
| "means for executing an autofocus algorithm using the assigned focus value masks" | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** executing an autofocus algorithm using the assigned focus value masks<br><br>**Structure:** See, e.g., 3:7-9; 10:18-22; 10:39-51; 10:57-63; 11:58-12:3; 8:36-52; 11:41-55. |
| "means for logically separating into a plurality of parts at least one sub-window of interest of a plurality of sub-windows of interest arranged in a grid formation in an autofocus window of interest" | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** for logically separating into a plurality of parts at least one sub-window of interest of a plurality of sub-windows of interest arranged in a grid formation in an autofocus window of interest<br><br>**Structure:** See, e.g., processor (3:7-9;10:18-22; 10:39-51; 10:57-63; 11:58-12:3); 7:36-43; 10:66-11:2. |

### B.    Disputed Claim Terms

#### 1.    "autofocus algorithm" (Claims 1, 9, 16, and 24)

| WSOU's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | instructions to automatically adjust a lens to achieve focus |

The term "autofocus algorithm" requires no construction for the following reasons.

*First*, the term "autofocus algorithm" is a term of art and should be accorded the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the

invention." *Philips*, 415 F.3d at 1313. The term of art status is demonstrated by the inclusion of the "autofocus algorithm" term in the Abstract. '681 patent at Abstract ("executing an autofocus algorithm using the assigned focus value masks"). "The purpose of the abstract is to enable the United States Patent and Trademark Office and the public generally to determine quickly from a cursory inspection the nature and gist of the technical disclosure." 37 CFR §1.72. Under that Rule, Examiners are instructed that an abstract should "sufficiently describe the disclosure to assist readers in deciding whether there is a need for consulting the full patent text for details." MPEP §608.01(b) (8th ed. Rev. 7 July 2008). Accordingly, the Examiner allowing the '681 patent to issue with "autofocus algorithm" in the Abstract demonstrates that the term had a plain and ordinary meaning in the art.

**Second**, Google errs in attempting to rewrite "algorithm" as "instructions" in this context. Nothing in either the '681 patent itself or its prosecution history compels the erroneous rewrite Google proposes. While the term "autofocus algorithm" (or its abbreviation "AF algorithm") is recited in the multiple times in the specification, *see e.g.*, '681 patent at 2:46; 2:56; 2:64—65; 3:5; 3:46; 4:19; 4:22; 6:28; 9:25, the word "instructions" (or the singular form) is not recited in either the specification or the claims. *See* generally '681 patent. There is no reason to arbitrarily substitute the words selected by the patentee—"algorithm"—with "instructions" as Google proposes.

**Third**, Google's construction is inconsistent with the specification in that it seeks to "achieve focus." The specification makes clear that focus can be qualified in various contexts— *i.e.*, "focus is maximal" (2:2); "correct focus" (*e.g.*, 1:52) "in-focus setting" (*e.g.*, 2:2); "in-focus position" (2:24); "correct image focus" (3:51). It is unclear what "focus" Google would purport to "achieve" with its proposed definition, and its definition is confusing.

**Fourth**, Google's proposed definition that requires "adjust[ing] a lens" would unnecessarily carve out instances where the "autofocus algorithm" determines that no adjustment of the lens is needed, such as when a user attempts to take a photo but the autofocus algorithm determines that no adjustment of the lens is necessary.

2.  "second part in between the first part and the second part" (Claims 1, 9, 16, and 24)

| WSOU's Proposed Construction | Google's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite |

In its Preliminary Invalidity Contentions,  Google claims that "[o]n its face, [all asserted] claims are not susceptible to reasonable ascertainment because it is unclear how a 'second part' of a subwindow can be located in 'in between the first part and the second part.'" -582 Case, Google's Preliminary Invalidity Contentions at 9. Contrary to Google's contention, the plain and ordinary meaning should apply and this claim language is not indefinite.

Indefiniteness must be evaluated in light of the intrinsic evidence to determine whether it informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 910-11. Google's position ignores the specification's description of an exemplary embodiment illustrated in FIG. 3 where the "AF sub-window of interest (310)" can be "logically separated into a plurality of parts which include a Mask 1 (340), Mask 2 (350) and Mask 3 (360)." '681 patent at 8:23-27. An annotated version of FIG. 3 is reproduced below highlighting Mask 1 (blue), Mask 2 (red), and Mask 3 (yellow):



FIG.3

The specification goes onto describe "where the plurality of parts of the at least one sub-window of interest comprise a first part closest to the center of the sub-window of interest, a third part farthest from the center of the sub-window of interest, and a second part in between the first part and the second part." '681 patent at 11:46-50. This description is consistent with Mask 3 ("first part"), Mask 2 ("second part"), and Mask 1 ("third part") as depicted in the embodiment of FIG. 3 above. The specification's description of a "second part" being "in between the first part and the second part" is merely describing the red-highlighted portion above. The red-highlighted portion is "in between" the boundary of the "first part" (illustrated as Mask 3 in FIG. 3) and the outer boundary of the "second part."

Google's proposed construction is also inconsistent with the prosecution history that particularly focsed on this claim language. The claim term "second part in between the first part and the second part" originally appeared in originally-filed claim 8. Application Ser. No. 12/315,060, Application of 11/25/2008 at 21 ("second part in between the first part and the second part") (**Ex. A**). In the Examiner's first substantive response, the Examiner objected to application

claim 8 as being dependent on rejected base claims but noted that claim 8 "would be allowable if rewritten in independent form including all of the limitations of base claim and any intervening claims." Application Ser. No. 12/315,060, Office Action of 12/2/11 at 12 (**Ex. B**). The Examiner then specifically referred to "second part in between the first part and the second part" in the reasons for allowance:

> The following is an examiner's statement of reasons for allowance. The prior art fails to teach Claims 8 and 24 which specifically comprise the following features in combination with other recited limitations:
>
> -- where the plurality of parts of the at least one sub-window of interest comprise a first part closest to the center of the sub-window of interest, a third part farthest from the center of the sub-window of interest, and a second part in between the first part and the second part, where the first part has a weighted focus value of $Value_1$, the second part has a weighted focus value of $Value_2$, and the third part has a weighted focus value of $Value_3$, where $Value_x$ is a rational value.

*Id.* As the Examiner suggested, the Applicant then amended the independent claims to include the above-listed claim language, and the Application issued with the limitation in these claims.

There is no indication that either the Examiner or Applicant deemed the language "unclear" as Google now contends, and the focus on this disputed term in the prosecution history is indicative of the contrary.

### 3.     "means for assigning a focus value mask to each of the plurality of parts of the at least one sub-window" (Claim 24)

| WSOU's Proposed Construction | Google's Proposed Construction |
|---|---|
| This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** assigning a focus value mask to each of the plurality of parts of the at least one sub-window<br><br>**Structure:** *See, e.g.*, processor (3:7-9; 10:18-22; 10:39-51; 10:57-63; 11:58-12:3); 5:10-13; FIG. 3; 8:36-52; 11:2-4. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶6.<br><br>**Function:** assigning a focus value mask to each of the plurality of parts of the at least one sub-window<br><br>**Structure:** none (indefinite) |

The parties agree that the "means for assigning" term (recited only in claim 24) is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6, and that the function at least includes "assigning a focus value mask to each of the plurality of parts of the at least one sub-window."

In its Preliminary Invalidity Contentions, Google objected to all three means terms in claim 24 as indefinite—*i.e.*, the "means for logically separating," "means for assigning," and "means for executing" -582 Case, Preliminary Invalidity Contentions at 11-12. For all three "means" terms, Google's Preliminary Invalidity Contentions allege that the '681 patent "fails to disclose and clearly link or associate any adequate structure for performing these recited functions." *Id.* Google's Invalidity Contentions provide no notice apart from raising the conclusory objection itself. *See id*.  This lack of notice prejudices WSOU's ability to respond in the instant brief. Moreover, that Google has since abandoned its indefiniteness objection to the other two "means" terms underscores the weakness and indiscriminate nature of its indefiniteness challenges.

WSOU has identified in the table above citations to the '681 patent addressing exemplary structure corresponding to the "means for assigning a focus value mask …" term.  For example, the disclosure of the '681 patent links the claimed function to adequate corresponding structure by expressly stating that according to "the exemplary aspect of the invention above, the … means for

assigning … comprises a processor. '681 patent at 3:7-8; *see also id.* at 10:18-22 (noting that the "embodiments of this invention may be implemented by computer software executable by a data processor of the … device 10, such as the main processor on board the device, or by hardware circuitry, or by a combination of software and hardware circuitry"). Further structure and/or algorithms are disclosed with respect to the recited function. *See* '681 patent at 5:10-13; FIG. 3; 8:36-52; 11:2-4.

### 4. "a processor configured to …" (Claim 16)

|  | **Google's Proposed Construction** |
|---|---|
| Plain and ordinary meaning | The recited functions are identical to the means-plus-function terms in claim 24, and thus the only issue is whether this term invokes Section 112, ¶6 |

Google's erroneous means-plus-function construction of the preamble's recitation of "processor configured to …" (recited only in claim 16) runs afoul of several well-established claim construction canons.   According to Google, the "a processor configured to …" term invokes Section 112, ¶ 6 for each of the "recited functions [that] are identical means-plus-function terms in claim 24." Google is wrong to seek a construction under § 112, ¶6 for the preamble of claim 16.

*First*, lack of the word "means" in claim 16 raises a rebuttable presumption against applying Section 112, ¶ 6. *Williamson*, 792 F.3d at 1348.   While the burden lies with Google to rebut the presumption, it failed to advance any argument or evidence in its Preliminary Invalidity Contentions (or in its disclosure of extrinsic evidence) as allegedly rebutting, or even addressing, the presumption against applying Section 112, ¶ 6 to claims 13 and 25, where neither claim recites the word "means."

*Second*, if one claim element in a patent expressly recites a means-plus-function element by using the terms "means for" and another claim element does not, this indicates that the applicant

knew how to claim a means-plus-function element when it wanted to and further supports not construing the limitation that does not recite "means for" as a means-plus-function limitation. *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1318–19 (Fed. Cir. 1999). Here, Google's position above acknowledges that claim 16 recites "functions [that] are identical to the means-plus0function terms in claim 24." Moreover, in its Preliminary Invalidity Contentions, Google acknowledges that claim 24 "is drafted in "traditional means-plus-function format." -582 Case, Preliminary Invalidity Contentions at 11. This claim differentiation—admitted by Google—signals the Applicant's knowledge of how to claim a mean-plus-function in claim 24, and intent to not invoke §112, ¶6 in claim 16.

**Third**, the law has long recognized that each individual claim constitutes a separate invention. *Smith & Griggs Mfg. Co. v. Sprague*, 123 U.S. 249, 256 (1887) ("each of the claims … is a separate and distinct invention"). To give effect to this principle, the doctrine of claim differentiation creates a rebuttal presumption that each claim in a patent has a different scope. Thus, a claim should not be construed in a manner that makes it redundant with any other claim. *Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000) ("Under the doctrine of claim differentiation, it is presumed that different words used in different claims result in a difference in meaning and scope for each of the claims."); *Comark Comm'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed.Cir.1998) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant."). The preambles of both claims 16 and 24 recite "[a]n apparatus comprising." As Google notes, the functions of both claims 16 and 24 are "identical." The only difference is each

element in claim 16 recites "a processor configured to …" whereas each element in claim 24 recites "means for."   By repeatedly reciting "means for" *only in claim 24*, only claim 24 should be construed as invoking Section 112, ¶ 6.   To hold otherwise would violate the doctrine of claim differentiation by impermissibly conflating into one at least the distinct scopes of independent claims 16 and 24.

**Fourth**, Google overlooks claim terms that connote structure to a person of ordinary skill in the art.   Courts have repeatedly rejected similarly flawed claim construction arguments that "processor configured to …" invokes 35 U.S.C. § 112, ¶ 6 as lacking any structural connotation. For example, the Eastern District of Texas recently found "that the presumption against applying § 112, ¶ 6 to the 'processor ... configured to ...' terms stands." *Clear Imaging Research, LLC v. Samsung Electronics Co., Ltd.*, Case No. 2:19-cv-00326-JRG, 2020 WL 6384731, *8-*9 (E.D. Tex. Oct. 30, 2020).   The Court further found that "[a]s used in the Asserted Patents, the term 'processor' is accorded its customary meaning of a class of structures on which software can run." *Id*.   Among a legion of cases the Court cited in support of its construction, the Court cited *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,* 948 F.3d 1342 (Fed. Cir. 2020) for the proposition that "'digital processing unit ... performing [functions]' found to be sufficiently definite structure in part because the claims provided operational context for the unit."   *Id*. (citing *Samsung*, 948 F.3d at 1347–48, 1353–54).   Those court findings are consistent with other ample authority of that sister district.   *See, e.g.*, *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 660 (E.D. Tex. 2019), *reconsideration denied*, No. 6:18-CV-30-JDK, 2019 WL 4935280 (E.D. Tex. Aug. 23, 2019) (claim limitations reciting "device configured to … detect" were not means-plus-function limitations where "the claim language provides a description of how the processor is specifically programmed to operate"); *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-

CV-00961 RWS-JDL, 2017 WL 2590195, *15–*17 (E.D. Tex. June 14, 2017) (term "processor" in a claim reciting that the processor "was configured" to perform certain operations was not a means-plus-function limitation); *Cellular Commc'ns Equip. LLC v. AT&T, Inc.,* Case No. 2:15-CV-576-RWS-RSP, 2016 WL 7364266, at *15 (E.D. Tex. Dec. 19, 2016) ("processor configured to" was not a means-plus-function limitation and would be given its plain meaning—"Here, 'processor' is not a 'nonce' term, but rather connotes a class of structures"). The Southern District of Texas similarly found that "unlike terms such as 'means,' 'element,' and 'device' that typically do not connote structure, 'processor' can on its own recite at least some structure to persons of ordinary skill in the art." *Fisher-Rosemount Systems, Inc. v. ABB Ltd*, Case No. 4:18-CV-00178, 2019 WL 6830806, *15-*16 (S.D. Tex. Dec. 12, 2019).  The court also identified "several courts [which] have held that 'processor' can connote structure."  *Id*. (collecting cases).

27

Dated: January 22, 2021                    Respectfully submitted,

                        By:     */s/ Ryan Loveless*
                                James L. Etheridge
                                Texas Bar No. 24059147
                                Ryan S. Loveless
                                Texas Bar No. 24036997
                                Brett A. Mangrum
                                Texas Bar No. 24065671
                                Travis L. Richins
                                Texas Bar No. 24061296
                                Jeffrey Huang
                                Brian M. Koide
                                Etheridge Law Group, PLLC
                                2600 E. Southlake Blvd., Suite 120 / 324
                                Southlake, TX 76092
                                Tel.: (817) 470-7249
                                Fax: (817) 887-5950
                                Jim@EtheridgeLaw.com
                                Ryan@EtheridgeLaw.com
                                Brett@EtheridgeLaw.com
                                Travis@EtheridgeLaw.com
                                Jhuang@EtheridgeLaw.com
                                Brian@EtheridgeLaw.com

                                Mark D. Siegmund
                                State Bar No. 24117055
                                mark@waltfairpllc.com
                                Law Firm of Walt, Fair PLLC.
                                1508 North Valley Mills Drive
                                Waco, Texas 76710
                                Telephone: (254) 772-6400
                                Facsimile: (254) 772-6432

                                *Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 30th day of January 22, 2021.

                        */s/ James L. Etheridge*
                        James L. Etheridge

28