IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00572-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00581-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00582-ADA** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF
OPENING CLAIM CONSTRUCTION BRIEF**

## Table of Contents

I.  U.S. Patent No. 7,304,563 (Case No. 6:20-cv-00581) ........................................................... 1

    1. "alert" ................................................................................................................. 1

    2. "alerting unit configured to issue an alert" ............................................. 2

    3. "signaling unit configured to locally signal to a user" ............................ 3

    4. "initiating [a/the] connection to the other communication terminal at a predetermined time offset from [signaling the user using the signaling unit/locally signaling the users/signaling the user by the signaling means]" ................................. 4

    5. "the terminal" ................................................................................................. 6

    6. "issuing means for issuing an alert" ........................................................... 7

II. Terms of U.S. Patent No. 8,041,806 (Case No. 6:20-cv-00572-ADA) ............................ 8

    1. "communication traffic exchanged with a communication network subscriber over an access communication link" ..................... 8

    2. "access network" ............................................................................................ 12

    3. The "behavioral information collector" terms ........................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*,
   830 F.3d 1341 (Fed. Cir. 2016) .................................................................................................. 2

*Al-Site Corp. v. VSI Intern., Inc.*,
   174 F.3d 1308 (Fed. Cir. 1999) .................................................................................................. 3

*Cisco Sys., Inc. v. TQ Delta, LLC*,
   928 F.3d 1359 (Fed. Cir. 2019) (citation omitted) .................................................................. 10

*Dyfan v. Target Corp.*,
   6:19-cv-179-ADA, Dkt. 57 (W.D. Tex. Nov. 24, 2020) ........................................................ 3, 4

*Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*,
   No. 2:16-cv-00052WL 1376436 (E.D. Tex. April 15, 2017) ................................................. 3, 4

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
   351 F. Supp. 3d 1100, 1114 (N.D. Ill. 2018) ........................................................................... 15

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................. 9

*Samsung Elecs. Am. v. Prisua Eng'g Corp.*,
   948 F.3d 1342 (Fed. Cir. 2020) ............................................................................................. 2, 4

*Spansion, Inc. v. Int'l Trade Comm'n*,
   629 F.3d 1331 (Fed. Cir. 2010) ................................................................................................ 15

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1369 (Fed. Cir. 2012) ............................................................................................. 1, 4

*Whirlpool Corp. v. Ozcan*,
   No. 2:15-CV-2103-JRG, 2016 WL 7474517 (E.D. Tex. Dec. 29, 2016) ................................. 15

I.      U.S. Patent No. 7,304,563 (Case No. 6:20-cv-00581)

   1.   "alert"

This term should be given its plain and ordinary meaning. Google's proposed construction is confusing, and Google's proposed construction should be rejected for improperly importing limitations not required in the claims or specification. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1369 (Fed. Cir. 2012) ("Absent disclaimer or lexicography, the plain meaning of the claim controls."). Google is wrong in stating that an "alert" or "signal" is a "sound." Dkt. 34, 1.[1] The '563 patent expressly provides that the alarm may be signaled by means of a loudspeaker, or "a light or vibrating unit or by another form of local alerting device." '563 patent, 4:4-8. Google argues that the patentee acted as a lexicographer and that its proposed construction seeks to require the term "alert" to be "instructions." Dkt. 34, 1. But there is no such requirement or lexicography in the claims or the specification. In fact, the word "instruction" does not appear anywhere in the '563 patent and there is nothing in the specification that describes an alert as necessarily being instructions to perform an action. Google argues that the claims include both the word "alert" and "signal" and, as a result, "alert" must be "instructions." But "alert" is used with regard to the "mobile communication terminal" and the term "<u>locally</u> signal" is used with regard to the "another communication terminal." Further, as the claims recite, the "alerting unit comprises a signaling unit." *See e.g.*, '563 patent, 5:55-56. On its face, Google's proposed construction not only improperly imports limitations not required in the claims or specification, but it is at the same time overbroad. Google proposes that any "instructions causing . . . an action" is an "alert." The result is nonsensical where, under Google's proposed construction, an "instruction" to turn off or silence alarms would be an "alert."

Google makes a half-hearted argument that the exemplary embodiments of **alarms** in the specification are somehow the "inventors" defining "instructions" for an "alert." However, as the

---

[1] WSOU cites to its opening brief as "Dkt. 33" and Google's response brief as "Dkt. 34," as filed in Case No. 6:20-cv-581-ADA (which is the same for all the above-captioned cases). WSOU cites to the pagination at the bottom of the page.

exemplary embodiments cited by Google shows, each refers to *alarms*, not an "alert." There is no requirement in the claim language or specification to require the term be "instructions" as Google proposes, and Google has failed to show any lexicography by the patentee.

### 2. "alerting unit configured to issue an alert"

This term should be given its plain and ordinary meaning. The question whether the term "alerting unit configured to issue an alert" invokes section 112, paragraph 6, depends on whether persons skilled in the art would understand the claim language to refer to structure, assessed in light of the presumption that flows from the drafter's choice not to employ the word "means." *Samsung Elecs. Am. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1354 (Fed. Cir. 2020). And "[i]n determining whether this presumption has been rebutted, the challenger must establish by a preponderance of the evidence that the claims are to be governed by § 112, ¶ 6." *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1347 (Fed. Cir. 2016).

Here, a person of skill in the art would understand the claim language to refer to structure, especially given that (1) the claims provide that the "alerting unit comprises a signaling unit" (*see, e.g.,* '563 patent, 5:55) and (2) the preamble recites "a mobile communication terminal" (*see e.g.*, *id.*, 5:43). In addition, the specification provides certain exemplary embodiments where a "[m]obile phone 1 comprises a central processor unit 10" and where processor 10 compares the real-time clock with an alarm stored in memory 21. '563 patent, 3:21. When the clock matches the entered time and optionally date, the processor activates an alarm, such as by causing the loudspeaker 14 to emit a noise. *Id.*, 3:58-67. Further, the specification provides for a second type of alarm where "the processor generates the alarm of the second type by calling the telephone number." *Id.*, 4:18-20.

In view of the intrinsic evidence, the presumption against means-plus-function under 35 U.S.C. § 112 ¶ 6 stands unrebutted. *See*, *e.g.*, *Prisua Eng'g Corp.*, 948 F.3d at 1354 (Board erred in determining that the term "digital processing unit" was a means-plus-function limitation since the evidence showed that the term was a structural term similar to a "general purpose computer" and not a functional term); *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-

00052WL 1376436, *15-*17 (E.D. Tex. April 15, 2017) (ruling that the terms "receiving unit," "sending unit," and "storage unit" were not means-plus-function limitations).

Google's reliance on *Dyfan v. Target Corp.*, 6:19-cv-179-ADA, Dkt. 57 at 20, n.4. (W.D. Tex. Nov. 24, 2020), is inapposite. In *Dyfan*, the issue was regarding "mobile device" as structure for "code." *Id.* That is not the case here, for alerting unit and the corresponding structure a mobile communication terminal processor. Another significant point of distinction over *Dyfan* is that the defendant there advanced *expert testimony* to support its position that certain terms were subject to means-plus-function treatment under § 112, ¶ 6 and were indefinite as allegedly lacking any corresponding structure. Here, Google relies exclusively on conclusory attorney argument and, in doing so, it grossly mischaracterizes the intrinsic evidence.

Finally, Google argues that "a POSITA would not understand these terms to refer to structure." But Google's attorney arguments do not show persons skilled in the art would not understand the claim language to refer to structure, nor do Google's attorney arguments show by clear and convincing evidence that this term is indefinite.

### 3.     "signaling unit configured to locally signal to a user"

This term should be given its plain and ordinary meaning. Because this term does not contain the words "means for," there is a rebuttable presumption that section 112, paragraph 6, does not apply to that limitation. *Williamson*, 792 F.3d at 1348. Moreover, under the doctrine of claim differentiation, if one claim element of a patent recites "means for" and an analogous claim element in another claim does not, this supports upholding the presumption against means-plus-function construction for the term that does not recite "means for." *See Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1318–19 (Fed. Cir. 1999); *compare* claim 1 (signaling unit) *with* claim 16 (signaling means).

A person of skill in the art would understand the claim language to refer to structure, especially given that the specification provides certain exemplary embodiments where the specification demonstrates various ways to signal locally, such as "means of the loudspeaker" or "by means of a light or vibrating unit or by another form of local alerting device if the phone were

3

so equipped" *Id.*, 4:4-8. Google agrees. Dkt. 34, 13. And Google's attorney arguments fail to show that a person of ordinary skill in the art would not understand the specification to connote specific structure. The presumption against means-plus-function under 35 U.S.C. § 112 ¶ 6 stands unrebutted here. *See*, *e.g.*, *Prisua Eng'g Corp.*, 948 F.3d at 1354 (Board erred in determining that the term "digital processing unit" was a means-plus-function limitation since the evidence showed that the term was structural term similar to a "general purpose computer" and not a functional term); *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052WL 1376436, *15-*17 (E.D. Tex. April 15, 2017) (ruling that the terms "receiving unit," "sending unit," and "storage unit" were not means-plus-function limitations).

Finally, Google's reliance on *Dyfan* is misplaced. In *Dyfan*, the Court noted that "mobile device" is insufficient structure for "code." *Id.* The distinguishable dispute here is over signaling unit and a processor as the corresponding structure. Furthermore, as noted above, another significant point of distinction over *Dyfan* is that the defendant there advanced *expert testimony* to support its position that certain terms were subject to means-plus-function treatment under § 112, ¶ 6 and were indefinite as allegedly lacking any corresponding structure. Here, Google relies exclusively on conclusory attorney argument and, in doing so, it grossly mischaracterizes the intrinsic evidence.

    **4.**  **"initiating [a/the] connection to the other communication terminal at a predetermined time offset from [signaling the user using the signaling unit/locally signaling the users/signaling the user by the signaling means]"**

This term should be given its plain and ordinary meaning. Google's proposed construction is confusing and unhelpful, and Google's proposed construction should be rejected for improperly importing limitations not required in the claims or specification. *Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls."). Google's proposed construction seeks to import limitations not required or even recited anywhere in the claims or specification, such as "direct communication" and "predefined communication terminal." Furthermore, the claims and specification show that "initiating a connection" does not

4

require a "direct connection," indeed the word "direct" does not appear anywhere in the specification or claims, for example, the specification recites "**[p]referably**, the said connection to another communication terminal is a phone call." '563 patent, 2:29-30.  As another example, the specification states that **preferably**, the said connection is communicated over a wireless link with the network.  *Id.*, 2:31-34.  Neither case expresses an unambiguous requirement that the connection must be "direct."  Moreover, the claims themselves recite that the connection is initiated to "another communication terminal." *See*, *e.g.*, *id.*, 5:50-52 (claim 1), 6:43-44 (claim 12), 7:2-3 (claim 16).  Nothing more is required.  Google acknowledges that the claim language can provide for non-direct connections (Dkt. 34, 4), but then argues that the specification does not disclose indirect connections.  *Id.*  However, the burden rests with Google to show disclaimer or lexicography to depart from the plain and ordinary meaning.  Google also overlooks that dependent claim 3, for example, provides for wireless communication with a communication network where the connection is communicated over a wireless link ('563 patent, 6:4-8); and there is no explicit requirement there that the connection be "direct."  A person of ordinary skill in the art would recognize that in cellular communications, such as with GSM, mobile devices may connect to base stations to communicate; and text messages exchanged between mobile devices may be sent via intermediary servers, which store and forward the messages, as opposed to require using direct peer-to-peer communication between the mobile units.

     Google's attempt to import "another predefined communication terminal" into the plain language of the claims should also be rejected.  As Google acknowledges, the specification teaches selecting (or pre-defining) a "phone number" (Dkt. 34, 5), not a "communication terminal." Google's attempt to conflate a phone number and a communication terminal should be rejected. Furthermore, Google attacks a strawman in arguing that "offset typically means to counterbalance or compensate for something." *Id*., 6.  Google also provides no support for its attorney argument. Rather Google undermines its position by asserting, just two sentences later, that "offset" in the context of the specification and claims is used to indicate how long before or afterwards a certain time that something is supposed to happen "e.g., one or two minutes later." *Id.*,(citing '563 patent,

5

4:49-51, 4:54-59). Google fails to establish that a person of ordinary skill in the art would not understand the term "offset" in the context of the specification and claim language. And Google has failed to show either disclaimer or lexicography applies here.

Finally, Google's construction unnecessarily injects ambiguity to an otherwise straightforward term. With respect to Google's "predefined interval" rewrite, for example, it is unclear whether the entire "interval" must be accounted for or, instead, if acknowledging an endpoint is enough. In other words, it is unclear how Google intends "interval" to differ from "offset" and it is further unclear how Google intends "predefined" to differ from "predetermined." Google's attempt to redraft the claim language in question is unnecessarily and impermissible under the circumstances.

### 5. "the terminal"

This term should be given its plain and ordinary meaning. Google identifies this term as the one appearing in Claim 12. The full claim term is "the terminal locally signaling to the user." '563 patent, 6:47-48. The language of Claim 12 is clear that "the terminal" derives its antecedent basis from "another communication terminal," where a connection is initiated with "another communication terminal so as to cause <u>that other terminal to locally signal the incidence</u> of the connection incoming thereto." *Id.*, 41-45. And in the immediately following claim element, "issuing an alert by <u>the terminal locally signaling to the user</u>." *Id.*, 46-47 (emphasis added). In other words, the claim language expressly gives context to "the terminal" by providing that it is "the terminal locally signaling to the user," which derives its antecedent basis from the claim element immediately above, specifically, "another communication terminal." And for the recitation of "the terminal" in the "storing" claim element that follows immediately after (*Id.*, 6:49-50), the context of the claim language again shows "the terminal" there also derives its antecedent basis from "another communication terminal." Specifically, that claim element recites "storing an indication in <u>the memory</u> of whether the alert is to be <u>issued locally by the terminal</u>." *Id.* (emphasis added). Here, "the memory" derives its antecedent basis from "a memory" of "a mobile communication terminal" (*see id.*, 6:37-40), but for "the terminal," the claim language provides

6

the context that because "the alert is to be <u>issued locally</u> by the terminal," again "the terminal" derives its antecedent basis from the same "another communication terminal" recited earlier in Claim 12. In other words, the indication is stored at the mobile communication terminal is an indication *about* the "another communication terminal." Google argues that the specification provides exemplary embodiments where the "another communication terminal" is "not necessarily local to the user" (Dkt. 34, 7), but Google only engages in hypotheticals instead of addressing the claim language which expressly recites "that other terminal to locally signal…", which provides the proper context for the term. Next, Google's reliance on the "offset" element is misplaced, as that element merely provides for initiating a connection at some time offset before the "other terminal" is to locally signal. In other words, that element provides for two alarms, for example as taught by the exemplary embodiment where "the user is disturbed separately by each alarm." '563 patent, 4:47-5:2.

      **6.**      **"issuing means for issuing an alert"**

The parties agree that this term is subject to 35 U.S.C. § 112, ¶ 6. The parties agree that the recited function is: "issuing an alert." The parties have a dispute regarding the corresponding structure recited by the specification. Claim 16 recites an "issuing means for issuing an alert when the current time matches the alert time by initiating a connection to another communication terminal over a network…" ('563 patent, 7:1-5), and also recites "wherein the means for issuing an alert comprises signaling means for locally signaling to the user" (*Id.*, 7:6-7). An in an exemplary embodiment, the specification discloses:

> "[t]he mobile phone also has a communication subsystem 18 for communicating with a mobile telephony network. The communication subsystem comprises **antenna 19 and a communication engine 20**. The communication engine 20 is connected between the antenna and the processor 10. <u>The communication engine handles conversion between base-band and radio frequency and handles signalling communications with the wireless network</u>. At least some functional elements of the communication engine may be implemented on a common chip with one or more parts of the central processing unit."

7

*Id.*, 3:32-42 (emphasis added).

Additionally, the specification also provides in another exemplary embodiment that "The mobile phone may be operable in accordance with any suitable communications protocol. Examples include GSM and 3G (UMTS)." *Id.*, 3:45-47. As shown by the specification, initiating a connection to another communication terminal over a network was well known in the art. All that is required is the necessary hardware (i.e., antenna and communication engine). To the extent an algorithm is required (which WSOU disputes because Google has not shown that the corresponding structure is not a special purpose processor), the above-cited passages provides that the algorithm was also well known in the art. For locally signaling to the user, the specification recites "[p]referably, the said signaling is audible signaling. Preferably the audible signaling is a ringtone." '563 patent, 2:57-58. And in an exemplary embodiment, the specification discloses various ways to signal locally, such as "means of the loudspeaker" or "by means of a light or vibrating unit or by another form of local alerting device if the phone were so equipped" *Id.*, 4:4-8. Google argues, without support, that "issuing means" does not perform the same function of "locally signaling to the user." *Id.* However, the following claim elements expressly recites that the issuing means comprises signaling means, therefore the issuing means includes the structure for the signaling means: "wherein the means for issuing an alert *comprises* signaling means for locally signaling to the user." '563 patent, 7:6-7. And "wherein the means for alert issuing an alert issues the alert by causing the signaling means to locally signal to the user." *Id.*, 7:8-9. Regardless, Google cites to no authority that a structure cannot perform more than one function. Thus, Google's argument is without merit. Accordingly, **the correct corresponding structure is "antenna, communication engine, and loudspeaker, and equivalents thereof**."

II.     **Terms of U.S. Patent No. 8,041,806 (Case No. 6:20-cv-00572-ADA)**

    1.  **"communication traffic exchanged with a communication network subscriber over an access communication link"**

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "the digital information traversing a network link between a communication network subscriber and an access network" |

As explained in WSOU's opening brief, no construction is required for this term. Dkt. 33, 11-14. Google fails to identify any lexicography or disclaimer in the intrinsic evidence that (1) unambiguously requires limiting "communication traffic" to "digital information" only and (2) somehow justifies rewriting "exchanged with a communication network subscriber over an access communication link" as, instead, "traversing a network link between a communication network subscriber and an access network." *See* Dkt. 33, 11-14. While Google argues (incorrectly) that its construction "follows directly from the specification and prosecution" (Dkt. 34, 31), the same could be said for every other transgression of the "cardinal sin" of impermissibly importing limitations. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) ("One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.").

Google only undercuts its attempt to newly add a "digital information" requirement by equating that *unrecited* couplet with "packet traffic." Dkt. 34, 14 ("packet traffic is digital information"). The doctrine of claim differentiation doubly refutes incorporating either couplet as a claim requirement. That the claimed "communication traffic" is not interchangeable with "packet traffic" (or digital information for that matter) is made explicit by dependent claim 3, which recites "wherein the monitored communication traffic *comprises packet traffic*." This doubly invokes the doctrine of claim differentiation by (1) comparison of claims 1 and 3 and further by (2) the recitation of both "communication traffic" and "packet traffic" *within the same claim*, and in the differentiated context of *one comprising the other*.

The specification also expressly precludes limiting "communication traffic" to packet traffic only. WSOU had pointed, for example, to the statement, "'*[w]here the monitored communication traffic includes packet traffic*,' which confirms that the 'communication traffic' does not necessarily include packet traffic." Dkt. 33, 11-12 (quoting '806 patent, 2:66-67) (emphasis added). As with the claim language, use of both "communication traffic" and "packet traffic" in the same sentence and in this context confirms they are not one and the same, but rather "communication" is a *broader* qualifier than "packet" in this context. Google cites that *same* statement from the specification for the *plainly inconsistent* proposition that "the only form of

9

communication traffic disclosed is 'packet traffic.'" Dkt. 34, 14 (citing the same). Google has not met its burden to show that either "packet traffic" or "digital information" is unambiguously required merely by citing (without explanation) to disclosure conveying just the opposite.

Ignoring the intrinsic evidence which expressly differentiates "communication traffic" and "packet traffic" as distinct terms, Google argues "[e]ach independent claim recites that communication network subscribers are provided with an Internet Protocol Television ('IPTV') service, which requires the communication of packet data." Dkt. 34, 14. Google mischaracterizes the claim language. Claim 1, for example, recites "the electronic content source provides an Internet Protocol Television (IPTV) service," without expressing any limitation as to *where* the IPTV service must be provided, much less that it must be provided to the particular "subscriber" recited elsewhere in the claim. Google also ignores claim language that underscores the error in restricting "communication traffic" to a single embodiment thereof. For example, claim 1 recites "a plurality of *types* of communication traffic" (16:9) and "collected from *types* of communication traffic *other than the one or more particular types* of communication traffic" (16:20-23). That multiple "types" of "communication traffic" can—*and indeed must*—exist proscribes restricting "communication traffic" to a single embodiment thereof.

Google quite literally puts form over substance in suggesting that "communication traffic" should be limited to one embodiment because the intrinsic evidence repeatedly refers to multiple "types" of "communication traffic" instead of multiple "forms" thereof. Dkt. 34, 14. Even if Google's *single form* characterization had been correct, and it is not, it would still be "improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Cisco Sys., Inc. v. TQ Delta*, *LLC*, 928 F.3d 1359, 1364 (Fed. Cir. 2019) (citation omitted). As shown above, and as discussed further in the opening brief, the claim language and specification expressly proscribe Google's importation. Dkt. 33, 11-14.

Google's characterization of the prosecution history does not meet the exacting standard to prove disclaimer. According to Google, certain art was allegedly distinguished on the basis of

not "collecting behavior information from communication traffic." Dkt. 34, 16 (citing Dkt. 34-3, 10). That certain art was successfully distinguished by mentioning a term recited in the disputed phrase does not give Google *carte blanche* to redraft that term or any other portion of that phrase in any manner Google sees fit. Google's conclusory assessment of the prosecution history simply fails to provide *any* evidentiary basis to find *any* disclaimer of scope.

Google fails to establish that the intrinsic evidence unambiguously "compel[s]" (Dkt. 34, 14) rewriting the remainder of the disputed term as, instead, "traversing a network link between a communication network subscriber and an access network." WSOU's opening brief explains why Google's untethered construction "would appear to exclude the possibility, for example, that the 'access communication link' be located somewhere within Access Communication Network 16 of Figure 1, though not necessarily directly connected to Subscriber 12." Dkt. 33, 12-14. In response, Google chides WSOU for focusing on one (independently fatal) counter example to Google's construction; and then Google attempts to trivialize that counter example ostensibly because "Figure 1 . . . does not even identify an 'access communication link.'" Dkt. 34, 16. Google misses the point. Each independent claim recites "the access communication link comprises ***a network link <u>in</u> an access network***." Google does not dispute its construction would require an (unrecited) "network link ***between*** a communication network subscriber and an access network," which is ***outside*** the Access Communication Network 16 where, according to the explicit claim language, at least the claimed "network link" ***must*** reside. Dkt. 33, 12-14.

Nothing in Fig. 2 of the '806 patent, or within its corresponding description, inoculates the counterexample disclosure of Fig. 1 or unambiguously compels the rewrite Google proposes. Google fixates on certain *non-limiting* descriptions of *example* embodiments described with reference to Fig. 2; and then Google argues its attorney interpretation of that disclosure should be imported as claim limitations because "the intrinsic record does not disclose the existence of an 'access communication link' in any location other than between the communication network subscriber and the access network." Dkt. 34, 14-15. Google not only commits the "cardinal sin" of importing alleged limitations from exemplary disclosure, without identifying any explicit and

11

unambiguous requirement to do so, Google's strained interpretation is refuted by the claim language itself. Indeed, only the contrapositive of Google's attorney argument is factually correct: the intrinsic record ***explicitly discloses*** the existence of an "access communication link" at a location ***other than between*** the communication network subscriber and the access network at least by including claim language that recites "*the access communication link* comprises a network link *in an access network*."

    2.   "access network"

| WSOU's Position | Google's Position |
| --- | --- |
| Plain and ordinary meaning. | "a network that connects a communication network subscriber to their Internet Service Provider (ISP)" |

Google's response confirms there is no need to define the "access network" in terms of *what access* the network must provide to *where* because this requirement is already made explicit in the claim language. Claim 1, for example, recites "the access network comprising an electronic content source that is operable to *deliver the accessed electronic content to the subscriber,* wherein the electronic content source provides an Internet Protocol Television (IPTV) service." Analogous language is recited in each independent claim. No further construction is required.

Google points to the "electronic content source provides an Internet Protocol Television (IPTV) service" as allegedly providing context that supports Google's rewrite. Dkt. 34, 17. It does not. Unlike the claimed "accessed electronic content," the claimed IPTV service is *not* recited as something that the "electronic content source" must be "operable to deliver . . . to the subscriber." Rather, the IPTV service is simply something "the electronic content source provides"—period. The claim language directed to the IPTV service, therefore, cannot support, *and certainly does not unambiguously require*, adding the extraneous requirement that the "access network" must further *provide to the subscriber* something other than what is already recited.

Google's characterization of the intrinsic evidence should also be rejected as internally inconsistent. Google argues the specification allegedly discloses *examples* where "subscribers access the IPTV service *through* a connection with their Internet Service Provider." *Id*. (emphasis

12

added).  Taking Google at its word, though only for the sake of argument, Google's alleged interconnections can be represented as:

<span style="background-color: yellow">Subscriber</span> → <span style="background-color: lightgray">Internet Service Provider (ISP)</span> → <span style="background-color: lightgreen">IPTV service</span>

Google's characterization of the specification is itself fatal to Google's construction.  This is because Google seeks to *add* the *extraneous* requirement that the access network must connect the subscriber to their ISP.  This *different* alleged interconnection can be represented as:

<span style="background-color: yellow">Subscriber</span> → <span style="background-color: lightgreen">access network</span> → <span style="background-color: lightgray">Internet Service Provider (ISP)</span>

In the distinguishable representations above, the "access network" and the IPTV service are both colored green to reflect that the claim language recites "the access network comprising an electronic content source that . . . provides an Internet Protocol Television (IPTV) service."  Google fails to defend its construction against *its own* characterization of an allegedly disclosed counterexample (the top or first representation above) where subscribers allegedly access the IPTV service *through* an ISP, as opposed to the other way around.

It is independently dispositive that, in purporting to characterize the intrinsic evidence, not once does Google even allege—*let alone attempt to prove*—any instance where any of the limitations it seeks to add through claim construction are expressly "required by the claim terms themselves, or unambiguously required by the specification or prosecution history." *Dayco Prod., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001) (citation omitted).  It follows that adding such "additional limitations" is "impermissible." *Id.*[2]

### 3. The "behavioral information collector" terms

Google fails to overcome at least two presumptions which counsel against Google's erroneous means-plus-function constructions and its curt indefinites challenges of the "behavior information collector" terms.  Dkt. 33, 15-18.  First, the claim language in question presumptively

---

[2] Google chides WSOU for ignoring "several references to 'Internet Service Provider' and 'ISP.'" Dkt. 34, 18.  But the evidentiary burden Google must meet to justify importing the limitations it seeks to add is not a threshold number of instances where the extraneous word or phrase is stated in the speciation.  Rather, Google must show that the additional limitations are "unambiguously required by the specification or prosecution." *Dayco*, 258 F.3d at 1327.

does not invoke means-plus-function under 35 U.S.C. § 112, ¶ 6.  Second, the claim language is presumptively definite; and this presumption can only be overcome by clear and convincing evidence.  Google's exclusive reliance on misguided attorney argument, without any expert testimony underpinning, comes nowhere close to overcoming either presumption.

On the first issue, Google offers the mere attorney argument that "'[c]ollector' is a general nonce term" in the recited contexts.  Dkt. 34, 20.  As alleged evidentiary support, Google offers—nothing.  Projecting its own failure, and improperly attempting to shift the applicable burden here, Google falsely asserts that "WSOU has not cited any evidence showing that a POSITA would have been familiar with the term 'behavioral information collector' or understand that term to connote any, much less sufficient, structure."  *Id*., 21.  Compounding its misrepresentation of the record, Google then states "WSOU cites to inapposite cases."  It is telling that Google selectively ignored the primary case WSOU had cited for the proposition that analogous collector terms "have been found to connote sufficiently definite structure in the context of computing arts."  Dkt. 33, 16 (discussing *CXT Systems, Inc. v. Academy, Ltd.*, No. 2:18-cv-00171-RWS-RSP, 2019 WL 4253841, *11-*12 (E.D. Tex. Sept. 5, 2019)).

WSOU identified other cases where analogous collector terms in the computing arts were not construed to invoke means-plus-function under 35 U.S.C. § 112, ¶ 6, unlike certain other terms under consideration in those cases.  Dkt. 33, 16 (collecting cases).  Google attempted to trivialize those additional cases because the respective collector terms at issue in each case were not among those analyzed under a means-plus-function construction.  But this should not be surprising given that "collector" is recognized in the computing arts as connoting structure, as evidenced by the fact that *no party* adopted Google's fringe position in those cases.  Indeed, Google failed to identify *any* contrary court opinion where a party *even attempted* to advance Google's untenable position.

Google's cursory analysis of the claim language overlooks specific connection and interaction of the disputed claim language with other structural components, which is an additional factor that further underscores the applicable presumption here.  Claim 1, for example, structurally interconnects and interrelates the "behavior information collector" with other structural

14

components at least by (1) reciting "a behavioral information collector operable to monitor *communication traffic exchanged with a communication network subscriber* over an *access communication link*, the access communication link enabling the subscriber to access electronic content, the behavioral information collector being configurable to *collect[,] from any of a plurality of types of communication traffic[,] behavior information*;" (2) reciting "a behavior analyzer *operatively coupled to the behavior information collector*;" (3) listing the "behavior information collector" among other claim elements, at least one of which must be "implemented using hardware."  Google's cursory analysis of the specification, offered without any expert testimony underpinning, likewise overlooks exemplary disclosure confirming that "collector" in the context of the claims connotes sufficiently definite structure.  *See*, *e.g.*, '806 patent, 6:29-46.

Because Google fails to meet its burden to overcome the presumption against applying a means-plus-function to the disputed "collector" terms, and because Google's indefiniteness challenge is inextricably tied to such a construction, the indefiniteness challenge necessarily fails as well.  But even if the terms had invoked means-plus-function construction, and they do not, Google clearly has not met its burden to prove, by clear and convincing evidence, that the specification lacks *any* corresponding structure.  Because Google's "garden-variety theory of indefiniteness 'requires a determination whether those skilled in the art would understand what is claimed,' *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) (citation omitted), the Court [should] conclude[] that expert testimony is necessary" here to meet the exacting burden of proof.  *Lecat's Ventriloscope v. MT Tool & Mfg.*, 351 F. Supp. 3d 1100, 1114 (N.D. Ill. 2018); *see also Whirlpool Corp. v. Ozcan*, No. 2:15-CV-2103-JRG, 2016 WL 7474517, at *3 (E.D. Tex. Dec. 29, 2016) (rejecting indefiniteness contention and noting that the accused infringer only provided attorney arguments to support its position, and no expert testimony).  Moreover, a person of ordinary skill in the art would be able to understand with reasonable certainty that the specification discloses structure corresponding to the "collector" terms as claimed.  *See*, *e.g.*, '806 patent, 6:29-46.

Dated: February 26, 2021　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　By:　　*/s/ Ryan Loveless*
　　　　　　　　　　　　　　　　　　James L. Etheridge
　　　　　　　　　　　　　　　　　　Texas Bar No. 24059147
　　　　　　　　　　　　　　　　　　Ryan S. Loveless
　　　　　　　　　　　　　　　　　　Texas Bar No. 24036997
　　　　　　　　　　　　　　　　　　Brett A. Mangrum
　　　　　　　　　　　　　　　　　　Texas Bar No. 24065671
　　　　　　　　　　　　　　　　　　Travis L. Richins
　　　　　　　　　　　　　　　　　　Texas Bar No. 24061296
　　　　　　　　　　　　　　　　　　Jeffrey Huang
　　　　　　　　　　　　　　　　　　Brian M. Koide
　　　　　　　　　　　　　　　　　　Etheridge Law Group, PLLC
　　　　　　　　　　　　　　　　　　2600 E. Southlake Blvd., Suite 120 / 324
　　　　　　　　　　　　　　　　　　Southlake, TX 76092
　　　　　　　　　　　　　　　　　　Tel.: (817) 470-7249
　　　　　　　　　　　　　　　　　　Fax: (817) 887-5950
　　　　　　　　　　　　　　　　　　Jim@EtheridgeLaw.com
　　　　　　　　　　　　　　　　　　Ryan@EtheridgeLaw.com
　　　　　　　　　　　　　　　　　　Brett@EtheridgeLaw.com
　　　　　　　　　　　　　　　　　　Travis@EtheridgeLaw.com
　　　　　　　　　　　　　　　　　　Jhuang@EtheridgeLaw.com
　　　　　　　　　　　　　　　　　　Brian@EtheridgeLaw.com

　　　　　　　　　　　　　　　　　　Mark D. Siegmund
　　　　　　　　　　　　　　　　　　State Bar No. 24117055
　　　　　　　　　　　　　　　　　　mark@waltfairpllc.com
　　　　　　　　　　　　　　　　　　Law Firm of Walt, Fair PLLC.
　　　　　　　　　　　　　　　　　　1508 North Valley Mills Drive
　　　　　　　　　　　　　　　　　　Waco, Texas 76710
　　　　　　　　　　　　　　　　　　Telephone: (254) 772-6400
　　　　　　　　　　　　　　　　　　Facsimile: (254) 772-6432

　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 30th day of February 26, 2021.

　　　　　　　　　　　　　　　　　　*/s/ James L. Etheridge*
　　　　　　　　　　　　　　　　　　James L. Etheridge