**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |  |
|---|---|---|
| **WSOU INVESTMENTS, LLC d/b/a, BRAZOS LICENSING AND DEVELOPMENT** | § § § § § § | |
|  | § | **Civil Case No. 6:20-cv-572-ADA** |
| *Plaintiff,* | § | |
| v. | § | **JURY TRIAL DEMANDED** |
|  | § | |
| **GOOGLE LLC,** | § § | |
| *Defendant.* | § § | |
|  | § | |

**DEFENDANT GOOGLE LLC'S MOTION FOR SUMMARY JUDGMENT OF PATENT**
**<u>INELIGIBILITY UNDER 35 U.S.C. § 101</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  LEGAL STANDARDS ............................................................................................... 2

III. PROCEDURAL BACKGROUND ............................................................................. 2

IV.  ARGUMENT .............................................................................................................. 3

      A.   *Alice* Step One: The Asserted Claims Are Directed To The Abstract Idea
          Of Delivering Targeted Content Based On The User's Information .................... 3

          1.   The Claims Cover The Abstract Idea Of Targeted Content
              Delivery .......................................................................................... 3

          2.   The Specification Confirms The Purported Invention Is An
              Abstract Idea ................................................................................... 8

          3.   The Asserted Claims Closely Resemble Claims That Courts
              Consistently Hold Cover Abstract Ideas ....................................... 9

      B.   *Alice* Step Two: The Asserted Claims Do Not Disclose Any "Inventive
          Concept" ........................................................................................................... 13

      C.   The Prosecution History Cements The Conclusion That The Asserted
          Claims Are Not Patent Eligible ....................................................................... 15

      D.   All Asserted Claims Are Patent Ineligible ..................................................... 16

V.   CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)................................................................17

*Affinity Labs, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)....................................................1, 6, 8, 10

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)................................................................... passim

*Bridge & Post, Inc. v. Verizon Comm'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) ................................................ passim

*BSG Tech*, 899 F.3d at 1290-91 ................................................................13, 17

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014).................................................................7

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)..................................................................8

*Content Extraction & Transmission LLC v. Wells Fargo Nat'l. Assn.*,
    776 F.3d 1343 (Fed. Cir. 2014)................................................................17

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)............................................... passim

*CyberSource v. Retail Decisions*,
    654 F.3d 1366 (Fed. Cir. 2011)..................................................................2

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)............................................... passim

*Ericsson Inc. v. TCL Commc'n Tech. Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020).................................................................7

*FairWarning IP, LC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016).................................................................8

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021)............................................... passim

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015).............................................................................5, 9, 18

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017)..........................................................................................5

*Intell. Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)..........................................................................................7

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015)..........................................................................................2

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012)..............................................................................................................2

*Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020).......................................................................3, 6

*Morsa .v Facebook, Inc.*,
  77 F. Supp. 3d 1007, 1014-15 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915 (Fed.
  Cir. 2015).........................................................................................................................12

*Network Architecture Innovations LLC v. CC Network Inc.*,
  2017 WL 1398276 (E.D. Tex. 2017) ...............................................................................12

*OpenTV, Inc. v. Netflix Inc.*,
  76 F. Supp. 3d 886 (N.D. Cal. 2014) ...............................................................................12

*RecogniCorp, LLC. v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017)..........................................................................................7

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)..............................................................................5, 15, 18

*Solutran, Inc. v. Elavon, Inc.*,
  931 F.3d 1161 (Fed. Cir. 2019)..........................................................................................9

*Two-Way Media v. Comcast Cable Comm'cns*,
  874 F.3d 1329 (Fed. Cir. 2017)..........................................................................................3

*Ultramercial, Inc. v. Hulu*,
  LLC, 772 F.3d 709 (Fed. Cir. 2014) ................................................................................11

## TABLE OF AUTHORITIES
### (continued)

Page

*VeriPath, Inc. v. Didomi*,
842 F. App'x 640 (Fed. Cir. 2021) ............................................................................4

**STATUTES**

35 U.S.C. § 101 ................................................................................................... passim

## <u>TABLE OF EXHIBITS</u>

| Exhibit No. | Description |
|:---:|:---|
| 1 | U.S. Patent No. 8,041,806 |
| 2 | File History Excerpts |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| WSOU | Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development |
| Google | Defendant Google LLC |
| '806 patent | U.S. Patent No. 8,041,806 |
| POSITA | Person Of Ordinary Skill In The Art |
| § 101 | 35 U.S.C. § 101 |

**\* *Emphasis added unless indicated otherwise*.**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

WSOU alleges infringement of claims 1-14 of U.S. Patent No. 8,041,806, titled

"Targeted Electronic Content Delivery Control Systems And Methods."  (Ex. 1.)  The asserted

claims are directed to the abstract idea of collecting information, analyzing that information, and

delivering targeted content based on that information.  The claims implement this abstract idea

by using generic "hardware" components described solely by their functionally.  On at least a

half-dozen occasions, the Federal Circuit has held that claims directed to delivering targeted

content are patent ineligible under Section 101.  "We have … noted that similar claims were

directed *to the abstract idea of targeted advertising.*"  *Free Stream Media Corp. v. Alphonso*

*Inc.*, 996 F.3d 1355, 1362 (Fed. Cir. 2021).  This result is not surprising because "tailoring of

content based on information about the user … is an abstract idea that is as old as providing

different newspaper inserts for different neighborhoods."  *Affinity Labs, LLC v. Amazon.com*

*Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016).  The Federal Circuit's *Free Stream* decision is

instructive and decisive, holding that claims reciting (1) "gathering information," (2) "matching

the information with other content *(i.e., targeted advertisements)* based on relevancy," and (3)

delivering the targeted content, were directed to an abstract idea.  996 F.3d at 1361-62.  Here, as

in *Free Stream,* the asserted claims are directed to the same abstract idea and, as in *Free Stream*,

the claims cannot be salvaged by "simply recit[ing] that the abstract idea will be implemented

using conventional components and functions generic to the technology."  *Id*. at 1366.

This conclusion is confirmed by the prosecution history, which occurred before *Alice*

*Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  During the pre-*Alice* prosecution, the

examiner rejected the asserted claims as directed to patent-ineligible subject matter.  The

applicant purported to overcome this rejection by amending the claims to recite "using

hardware" to "implement[]" the claimed functions.  But *Alice* directed that such an amendment is

insufficient to satisfy Section 101, explaining that the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.  Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility."  *Id.* at 223. The claims here do no more than that.

## II.     LEGAL STANDARDS

Whether claims cover patent-ineligible subject matter is a question of law properly resolved on summary judgment where, as here, the contents of the patent and prosecution history are undisputed.  *CyberSource v. Retail Decisions*, 654 F.3d 1366, 1369 (Fed. Cir. 2011).  Courts apply a two-step process to determine whether claims cover patent-ineligible "abstract ideas." *Alice*, 573 U.S. at 217-18.  First, the court determines whether the claim's "character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).  The court looks at the claim's "focus" or "basic thrust" to determine whether it is directed to an abstract idea.  *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1353 (Fed. Cir. 2016).  Second, the court proceeds to "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18.  The inventive concept must be "significantly more than" the abstract idea itself, *id.*, and must be more than "well-understood, routine, conventional activity." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012).

## III.     PROCEDURAL BACKGROUND

The Court's Claim Construction Order held that the disputed terms in the '806 patent— including the "behavioral information collector"—carry their "plain and ordinary meaning." (Dkt. 46 at 2.)  The parties are now five months into fact discovery.  Google has served invalidity contentions and an interrogatory seeking the complete basis for WSOU's position as to why the

asserted claims are not patent-ineligible.  WSOU has provided no substantive response.  There is no dispute about the contents of the relevant record—the patent and its prosecution history.

## IV.    ARGUMENT

The asserted claims are directed to the abstract idea of collecting information about a user, analyzing that information, and delivering targeted content to the user.  *See* Section IV.A. The Federal Circuit has repeatedly held that claims for delivering targeted content are directed to an abstract idea.  *See, e.g., Free Stream*, 996 F.3d at 1361 (invalidating claims "directed to the *abstract idea of targeted advertising*"); *In re Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020) (holding that claims directed to "targeted advertising" is an "abstract idea[]"); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362 (Fed. Cir. 2020) ("The claims at issue here are directed to the *abstract idea of using a computer to deliver targeted advertising* to a user."); *Bridge & Post, Inc. v. Verizon Comm'ns, Inc.*, 778 F. App'x 882, 888 (Fed. Cir. 2019) (holding that claims were "directed to the abstract idea of using persistent identifiers to implement targeted marketing").  The asserted claims are no different.  Indeed, the rationale underlying the Federal Circuit's decisions is straightforward and applies with equal force here: "The concept of tailoring advertisements based on user data … dates back at least to local radio and television advertisements."  *Bridge & Post*, 778 F. App'x at 884.  The asserted claims also fail to add anything significantly more to the abstract idea.  *See* Section IV.B.  Instead, they simply recite that delivering targeted content is generically "implemented using hardware."

### A.    *Alice* Step One: The Asserted Claims Are Directed To The Abstract Idea Of Delivering Targeted Content Based On The User's Information

#### 1.    The Claims Cover The Abstract Idea Of Targeted Content Delivery

For purposes of Section 101, courts routinely analyze a "representative claim" when the asserted claims are substantially similar.  *Two-Way Media v. Comcast Cable Comm'cns*, 874

F.3d 1329, 1337 (Fed. Cir. 2017).  Here, claim 1 is representative, *see* Section IV.D, and

examining the limitations—individually and collectively—reveals that their "focus" and

"character" is an abstract idea.  *Elec. Power*, 830 F.3d at 1352.  Claim 1 recites:

> 1. A system comprising:
>
> [a] a behavioral information collector operable to monitor communication traffic exchanged with a communication network subscriber over an access communication link, the access communication link enabling the subscriber to access electronic content, the behavioral information collector being configurable to collect from any of a plurality of types of communication traffic in the monitored communication traffic behavioral information indicative of behavior of the subscriber in using the access communication link;
>
> [b] a behavioral analyzer operatively coupled to the behavioral information collector and operable to maintain a behavioral profile of the subscriber that reflects ongoing behavior of the subscriber, based on behavioral information collected from only one or more particular types of the plurality of types of communication traffic in the monitored communication traffic, maintenance of the behavioral profile being unaffected by behavioral information collected from types of communication traffic other than the one or more particular types of communication traffic; and
>
> [c] an electronic content delivery controller operatively coupled to the behavioral analyzer and operable to control, based on the behavioral profile, delivery of targeted electronic content to the subscriber for presentation with electronic content accessed by the subscriber,
>
> [d] wherein at least one of the behavioral information collector, the behavioral analyzer, and the electronic content delivery controller is implemented using hardware,
>
> [e] wherein the access communication link comprises a network link in an access network, the access network comprising an electronic content source that is operable to deliver the accessed electronic content to the subscriber;
>
> [f] wherein the electronic content source provides an Internet Protocol Television (IPTV) service, and
>
> [g] wherein the electronic content delivery controller is further operable to select the targeted electronic content from targeted electronic content provided by multiple targeted electronic content providers.

(Ex. 1 at claim 1.)  "[S]tripped of excess verbiage, at its most basic level, [the] claim is anchored

on the abstract idea" of delivering targeted content, *VeriPath, Inc. v. Didomi*, 842 F. App'x 640,

643 (Fed. Cir. 2021), using "hardware."  The limitations recite the abstract idea of monitoring

and collecting information, analyzing that information, and providing targeted content based on

that information.  Such "result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power*, 830 F.3d at 1356.

Limitation 1[a] recites a "behavioral information collector" (the "collector") that monitors and collects information about a user.  Limitation 1[b] recites a "behavioral analyzer" (the "analyzer") that analyzes that information and maintains a user profile.  As evident from the claim language, these limitations describe the collector and the analyzer in purely functional terms—collecting and analyzing information.  The law is well-settled that the "process of collecting and analyzing information," even when "limited to particular content or a particular source," is an abstract concept.  *SAP Am., Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1168 (Fed. Cir. 2018); *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (claims reciting "collecting, displaying, and manipulating data" are directed to abstract ideas).  When evaluating claims specifically directed to delivering targeted content, the Federal Circuit has made clear that "'analyzing' the information and 'placing directed media' based on that analysis" is a computer implementation of an abstract idea.  *Bridge & Post*, 778 F. App'x at 887.  Likewise, the court has held that a "user profile" is simply a "generic computer element[]" for implementing the same abstract idea.  *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015).

Limitation 1[c] recites an "electronic content delivery controller" that delivers "targeted" content based on the user's profile, and limitation 1[g] states that the targeted content may come from multiple sources.  Neither limitation advances the claim past an abstract idea.  Addressing the same types of limitations, the Federal Circuit "ha[s] previously held [that] claims related to 'customizing information based on [] information known about the user, and [] specific data' are directed to abstract ideas." *Bridge & Post*, 778 F. App'x at 888.  The court "ha[s], in other cases,

noted that similar claims were directed to the abstract idea of 'targeted advertising.'" *Free Stream*, 996 F.3d at 1362; *see Morsa*, 809 F. App'x at 917 (claims "directed to abstract idea of "customizing information based on the user and matching them to the advertiser"). Targeting advertising based on multiple sources is likewise abstract.

Limitation 1[d] generically recites implementing at least one of the prior three components in "hardware." This limitation does not include any details regarding the "hardware," nor does it describe an improvement to the function of "hardware" components. In such instances, "[g]eneric and functional hardware is insufficient to render eligible claims directed to an abstract idea." *Customedia*, 951 F.3d at 1366. As in *Customedia*, the "claims at issue here are directed to *the abstract idea of using a computer to deliver targeted advertising to a user*, not to an improvement in the functioning of a computer." *Id.* at 1362. The court determined that "[s]uch generic and functional hardware is insufficient to render" the claims patent eligible. *Id.* Likewise, in *Free Stream*, the court explained that "the alleged technological improvement does nothing more than implement a computer to achieve the abstract idea of providing targeted advertising." 996 F.3d at 1365. The same reasoning and outcome apply here.

Limitations 1[e] and 1[f] recite elements of a pre-existing technological environment. They simply limit the claim to an IPTV service and require an electronic content source. As a matter of law, this does not advance the claims beyond the abstract idea of delivering targeted content. *See Affinity Labs.*, 838 F.3d at 1259 ("The Supreme Court and this court have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."). Again, the Federal Circuit has held that "receiv[ing] and send[ing] information over a network … *is not even arguably inventive*," and any "narrowing … attempt to limit the use of the abstract . . . idea

to a particular technological environment … has long been held insufficient to save a claim."

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *see Bridge & Post*, 778 F.

App'x at 892 ("communication over a network is an abstract idea").

Collectively, claim 1 is focused on delivering targeted content based on collecting and

analyzing user information.  "Targeted marketing is a form of tailoring information based on

provided data, which we have previously held is an abstract idea."  *Bridge & Post*, 778 F. App'x

at 887.  So too here.  Collecting information is an abstract idea, analyzing information is an

abstract idea, and providing targeted content based on analysis of information is an abstract idea.

Combining these functions together does not make the claim any less abstract.  "Adding one

abstract idea … to another abstract idea … does not render the claim non-abstract."

*RecogniCorp, LLC. v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Nor can technical-sounding lingo obscure the claiming of an abstract idea. "Claims do

not become eligible simply because they are written or characterized in a highly technical

manner.  That would violate the Supreme Court's caution that patent eligibility must not depend

simply on the draftsman's art."  *Ericsson Inc. v. TCL Commc'n Tech. Ltd.*, 955 F.3d 1317, 1328

n.2 (Fed. Cir. 2020).  The expanse and numerosity of the claim limitations is irrelevant to a

Section 101 analysis.  As the Federal Circuit explained, "[t]hough lengthy and numerous, the

claims do not go beyond requiring the collection, analysis, and display of available information

in a particular field, stating those functions in general terms, without limiting them to technical

means for performing the functions that are arguably an advance over conventional computer

and network technology."  *Electric Power*, 830 F.3d at 1351.  The same is true here.

Moreover, "there is nothing in the claims themselves that foreclose[s] them from being

performed by a human, mentally or with pen and paper."  *Intell. Ventures I LLC v. Symantec*

*Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016).  The abstract idea here is equivalent to the real-life process where a salesperson keeps files about their customer's likes and dislikes and then contacts customers with offers based on knowledge about that customer's preferences.  The Federal Circuit has consistently "treat[ed] analyzing information by steps people go through in their minds … without more, as essentially mental processes within the abstract-idea category." *FairWarning IP, LC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016).

### 2. The Specification Confirms The Purported Invention Is An Abstract Idea

The specification is also "helpful in illuminating what a claim is directed to … [but] the specification must always yield to the claim language" when identifying the "true focus of the claim."  *ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 766 (Fed. Cir. 2019).  Here, the specification confirms that the central aspect of the alleged invention is the abstract concept of collecting information and delivering targeted content based on that information.  The specification states that the alleged invention "allow[s] advertisers to deliver highly targeted advertisements to end consumers." (Ex. 1 at 14:52-55.)  It does so by controlling "content delivery … based on subscriber behaviors."  (*Id.* at 1:8-10.)  But as explained above, the Federal Circuit has repeatedly held that targeted advertising is both well-known and abstract.  *See Bridge & Post*, 778 F. App'x at 884 (delivering targeted content "dates back at least" to local radio and TV ads); *Affinity Labs.*, 838 F.3d at 1271 (same).

Nothing in the patent suggests that the alleged invention improves the operation of any device from a *technical* perspective to implement the abstract idea of delivering targeted content.  *See ChargePoint*, 920 F.3d at 768 ("[T]he specification never suggests that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could.  Nor does the specification suggest that the invention involved overcoming

some sort of technical difficulty in adding networking capability to the charging stations."). And even if delivering targeted content over the internet was challenging, "merely reciting an abstract idea by itself in a claim—even if the idea is novel and non-obvious—is not enough to save it from ineligibility." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019).

The patent provides no explanation as to *how* these functional ideas could actually be implemented—there is no disclosure about *how* to collect information, *how* to analyze information, or *how* to select targeted content. Illustrating this, Figure 3, which "is a flow diagram of an electronic content delivery control method" (Ex. 1 at 13:50-51), only shows generic functions without any detail about how to implement those functions:



**FIG. 3**

And, as explained above, these generic functions all map to the abstract concept of collecting information, analyzing that information, and delivering tailored content.

> **3.  The Asserted Claims Closely Resemble Claims That Courts Consistently Hold Cover Abstract Ideas**

As explained above, the asserted claims are analogous to the plethora of other targeted-content claims held to be abstract ideas under § 101. *See Free Stream*, 996 F.3d at 1361-62 (patent-ineligible claims directed to targeting advertising by gathering user information, analyzing information to determine content, and delivering content to user's device); *Cap. One Bank*, 792 F.3d at 1369 (patent-ineligible claims directed to tailoring content based on user data); *Bridge & Post.*, 778 F. App'x at 887–88 (patent-ineligible claims directed to delivering targeted

content by "retrieving a persistent device identifier," "determining" and "retrieving" information associated with the identifier, "analyzing" the information, and "placing directed media"). As here, those cases involved claims related to "customizing information based on … information known about the user [which] is an abstract idea." *Affinity Labs*, 838 F.3d at 1271.

First, in *Bridge & Post*, the Federal Circuit held claims directed to "tracking a user's computer network activity and using information gained about the user to deliver targeted media, such as advertisements" to be patent-ineligible. 778 F. App'x at 884. There, the alleged improvement was using specific identifiers to overcome the problem of "privacy-concerned users deleting cookies and tracking data." *Id.* at 885. One claim recited using a user's identifiers, determining and storing the network address, and using a profile with that information. *Id.* at 886-87. Holding the claims invalid under a § 101, the court explained that the "recited steps of 'retrieving a persistent device identifier,' 'determining' and 'retrieving' information associated with the identifier, 'analyzing' the information, and 'placing directed media' based on that analysis are nothing more than a computer-implementation of targeted marketing over the Internet." *Id.* at 887. The court "determin[ed] that the claims are directed … to the abstract idea of implementing targeted marketing using a persistent identifier." *Id.* Here, the asserted claims similarly focus on the abstract concept of gathering information about a user, analyzing that information, and delivering targeted content based on the user's profile.

Second, in *Free Stream*, the Federal Circuit examined claims reciting three main components: "(1) a networked device (e.g., a smart TV); (2) a client device (e.g., a mobile device); and (3) a relevancy matching server." 996 F.3d at 1358. The relevancy matching server matched content identification data with targeted data. *Id.* The claims also used "a behavioral history of a user" and other "information associated with the user" in executing instructions. *Id.*

at 1359.  The court held these claims were directed to the overarching "abstract idea of targeted advertising," which was achieved by "(1) gathering information about television users' viewing habits; (2) matching the information with other content (i.e., targeted advertisements) based on relevancy to the television viewer; and (3) sending that content to a second device."  *Id.* at 1361-62.  The alleged improvement did "nothing more than implement a computer to achieve the abstract idea of providing targeted advertising."  *Id.* at 1365.  The court explained that improving "the abstract idea of targeted advertising" is insufficient where there is no "improvement of a technology or creation of a new computer functionality."  *Id.*  Likewise, the asserted claims here are directed to collecting behavioral information in order to deliver targeted content.

Third, in *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014), the Federal Circuit considered claims for online advertising.  The claims recited eleven steps for displaying an ad in exchange for access to media:

> (1) receiving copyrighted media from a content provider; (2) selecting an ad after consulting an activity log to determine whether the ad has been played less than a certain number of times; (3) offering the media for sale on the Internet; (4) restricting public access to the media; (5) offering the media to the consumer in exchange for watching the selected ad; (6) receiving a request to view the ad from the consumer; (7) facilitating display of the ad; (8) allowing the consumer access to the media; (9) allowing the consumer access to the media if the ad is interactive; (10) updating the activity log; and (11) receiving payment from the sponsor of the ad.

*Id.* at 714-15.  The court held these steps recited an abstraction, and though certain limitations added an additional degree of particularity, the concept was nonetheless the same.  *Id.* at 715.  Similarly, here the analysis of behavioral information—like the consultation of the activity log—does nothing to save the claims from abstraction.

The reasoning and logic in the foregoing Federal Circuit cases compel the same conclusion here.  Just like the claims in those cases collected information and delivered tailored content by analyzing that information, the asserted claims here are directed to the same abstract

idea--collecting user information, analyzing that information, and delivering tailored content based on that information.

Additionally, consistent with Federal Circuit precedent, numerous district courts hold claims directed to delivering targeted content as patent ineligible.  In *Morsa v. Facebook, Inc.*, the court held that claims were directed to the abstract ideas of "targeting advertisements to certain consumers, and using a bidding system to determine when and how advertisements will be displayed."  77 F. Supp. 3d 1007, 1014-15 (C.D. Cal. 2014), *aff'd,* 622 F. App'x 915 (Fed. Cir. 2015) (summarily affirming).  Observing that the claims' focus was targeting ads to particular internet users based on their characteristics, the court reasoned that "matching consumers with a given product or service has been practiced as long as markets have been in operation."  *Id.* at 1013.  Other district courts addressing similar claims directed to delivery of targeted content have likewise held such claims to be abstract and patent ineligible.  *See Network Architecture Innovations LLC v. CC Network Inc.*, 2017 WL 1398276, at *1, *4-5 (E.D. Tex. 2017) (addressing claims for "distribut[ing] targeted bulletins (e.g., advertisements) to users," and holding that claims were abstract because matching ads to "user's likes and dislikes" was directed to "concept of pairing advertisements with [user] content" that was "an idea that the Federal Circuit has repeatedly found as abstract"); *OpenTV, Inc. v. Netflix Inc.*, 76 F. Supp. 3d 886, 892-93 (N.D. Cal. 2014) (holding that claims reciting steps of "receiving a user identification," "capturing … user information," keeping a "user profile [with] captured … user information," "selecting a targeted program," were directed to an abstract idea that was implemented using "generic computer processors, databases, and internet technology").

**B.** *Alice* **Step Two: The Asserted Claims Do Not Disclose Any "Inventive Concept"**

Patentability requires that a claimed combination of elements amounts to "*significantly more* than a patent upon the ineligible concept itself." *Alice*, 570 U.S. at 219.  Here, claim 1 fails to meet this standard.  Viewing the limitations individually and as an ordered combination, claim 1 recites no more than implementing the abstract idea of delivering targeted content through generic "hardware" on a network.  The Supreme Court and Federal Circuit have stressed that "generic computer implementation" is insufficient to transform an abstract idea into a patent-eligible invention. *Id.* at 212; *see BSG Tech LLC v. Buyseasons, Inc.* 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("an abstract idea using conventional and well-understood techniques" does not satisfy Section 101).

Claim 1 recites the functions of monitoring and collecting information, analyzing that information, and providing targeted content by using generic hardware components.  The claims describe the recited hardware components as purely functional, rather than as providing any technical advantage or improvement. *See Customedia*, 951 F.3d at 1366 (holding that claims failed *Alice*'s step 2 because "[a]side from the abstract idea of delivering targeted advertising, the claims recite only generic computer components").  The specification confirms that this is not a technological improvement because "each component may be implemented in hardware, software, firmware, or combinations thereof."  (Ex. 1 at 6:19-21.)  Indeed, as the '806 patent concedes, the claimed "components" are described "in terms of their function" because of the "broad range of possible implementations of many of the components."  (*Id.* at 7:3-8.)  Such generic limitations merely serve as "a conduit for the abstract idea" and cannot supply an inventive concept. *Free Stream*, 996 F.3d at 1358-59, 1366 (generic components such as "server," "mobile device," "processor," and "memory" cannot extend claims beyond an abstract

idea).  And recitation of an IPTV service only limits the claims to a technological context—one that the specification recognizes as pre-existing technology.  (Ex. 1 at 5:19-23 (noting that ISPs "provide[] an Internet Protocol TV (IPTV) service as a source of electronic content").

The specification further confirms the absence of any inventive concept by explicitly stating that the claimed hardware components are generic and well known.  (Ex. 1 at 4:62-67 (noting a POSITA "will be familiar with many different types" of systems used by the invention); *id.* at 5:11-16 (noting "topology" of the alleged invention is "typical of an Internet service system, wherein an Internet Service Provider (ISP) implements switches, routers, and/or other network equipment"; *id.* at 5:24-30 (disclosing that "many examples" of components used by the alleged invention and "their operation will be familiar" to a POSITA); *id.* at 7:9-14 (disclosing that the "databases" used by the alleged invention can be implemented using memory devices that "are common in communication and processing equipment").)  The specification emphasizes that the "invention is not limited to any particular types of equipment, protocols, or operations[s]." (*Id.* at 5:26-30.)  The specification further concedes that the disclosed components are functionally described because they are not unique or new:

> Given the broad range of possible implementations of many of the components … these *components are described herein primarily in terms of their functions.*  Based on the functional descriptions, *a [POSITA] would be enabled to implement the invention in any of various ways.*

(*Id.* at 7:3-8.)

In *Customedia*, the Federal Circuit addressed similar circumstances, where the "specification acknowledge[d] that the storage device 'may be *any* storage device … *known in the art*' and the receiver unit may include 'any digital or analog signal receiver … capable of accepting a signal transmitting any kind of digital or broadcast information."  951 F.3d at 1366.

The court explained that "[s]uch generic and functional hardware is insufficient to render eligible claims directed to an abstract idea." *Id.*  The same holds true in this case.

At bottom, "invocation of already-available computers that are not themselves plausibly asserted to be an advance, for use in carrying out improved mathematical calculations, amounts to a recitation of what is well-understood, routine, and conventional." *SAP*, 898 F.3d at 1170. The asserted claims recite "a mere use of a computer as a tool" to implement the abstract idea of delivering targeted content by "using conventional components and functions generic to the technology." *Free Stream*, 996 F.3d at 1363, 1365-66.  As such, the claims fit into the familiar class of claims that do not focus on an "improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power*, 830 F.3d at 1354.

### C.   The Prosecution History Cements The Conclusion That The Asserted Claims Are Not Patent Eligible

The prosecution history of the '806 patent confirms that the asserted claims are not drawn to patent eligible subject matter.  During prosecution, the examiner rejected the claims as unpatentable under § 101, explaining that the claims recited three components—"a behavior information collector," a "behavior analyzer," and "electronic content delivery controller"—that were implemented in software and failed to meet the patent-eligibility requirements.  (Ex. 2 at 173.)[1]  In response, the applicant did not assert that the claims (as drafted) covered patent-eligible matter, nor did the applicant contend that the claims covered something more than an abstract idea.  Instead, the applicant amended the claims to require that the functions associated with the collector, analyzer, and controller be "implemented using hardware."  (*Id.* at 154-58.) The applicant then stated that the amended claims "explicitly recite[d]" components

---

[1]  Ex. 2 is excerpts from the file history produced with the bates number WSOU_572_8041806-0000001.  For ease of review, Google cites to the last three bates numbers.

"implemented using hardware," thus making the claims patent eligible.  (*Id.* at 161.)  The examiner accepted this argument.

Notably, the '806 patent issued before the *Alice*, which rejected the notion that "recit[ing] specific hardware configured to perform specific computerized functions" somehow qualifies claims as patent eligible.  573 U.S. at 226.  The Court instructed that "recit[ing] a handful of generic computer components configured to implement the same [abstract] idea … add[s] nothing of substance to the underlying abstract idea," and the claims were thus "patent ineligible under § 101."  *Id.* at 226-27.  Indeed, *Alice* explained that "hardware" such as a "data processing system" and "communications controller" are "purely functional and generic."  573 U.S. at 226-27.  The same is true for the asserted claims' recitation of "at least one of the behavioral information collector, the behavioral analyzer, and the electronic content delivery controller is implemented using hardware."

### D.      All Asserted Claims Are Patent Ineligible

The '806 patent has two groups of claims.  Claims 1, 9, and 10 are system claims, and claims 11 and 14 are method claims.  The asserted claims are all substantially similar and directed to the same concept of tailoring information for a user based on information known about the user.  All the claims recite: (i) monitoring "communication traffic" tied to a "subscriber" and that subscriber's "behavioral information"; (ii) using an "access communication link"; (iii) maintaining a "behavioral profile" of the "subscriber"; (iv) "deliver[ing] [] targeted electronic content to the subscriber"; and (v) using an "access network" comprised of "electronic content" over an "Internet Protocol Television (IPTV) service."  The system claims all comprise a "behavior information collector"; a "behavioral analyzer"; and an "electronic content delivery controller" that are similarly configured to deliver "targeted electronic content" based on a "behavioral profile" using an "access communication link."  Similarly, the method claims are

directed to achieving the functional equivalent by reciting "monitoring" of "communication traffic"; "collecting" "behavioral information" from the "monitored communication traffic"; "maintaining" a "behavioral profile" for the "subscriber"; "controlling" delivery of "targeted electronic content" based on the "behavioral profile"; and "selecting" the "targeted electronic" from multiple providers.  The method and system claims thus recite substantially similar components and functionality.

An extended claim-by-claim analysis is unnecessary when multiple claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Nat'l. Assn.,* 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see Alice*, 573 U.S. at 224 (single method claim "representative" of all claims across four patents).  Where, as here, the claims "contain only minor differences in terminology [and] require performance of the same basic process," they "should rise or fall together." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013).  Claim 1 is thus representative of all the asserted claims.  The above analysis applies equally to all the asserted claims because they are directed to the same abstract idea of collecting and analyzing information about a user and delivering targeted content based on that information, and none adds an inventive concept.  Nevertheless, the reasons why each asserted claim also fails *Alice*'s two-step test are as follows.

Dependent claims 2 and 12, depending from claims 1 and 11, recite that "the behavioral information [be collected] from only the one or more particular types of communication traffic in the monitored communication traffic."  Both claims relate to the same abstract idea as claims 1 and 11, and merely limit the application of the abstract idea to evaluating "one or more" non-specific particular types of traffic.  A "claim is not patent eligible merely because it applies an abstract idea in a narrow way." *BSG Tech* , 899 F.3d at 1291 ("As a matter of law, narrowing or

reformulating an abstract idea does not add 'significantly more' to it.").  Nothing in claims 2 and 12 alters the analysis for claim 1.

Dependent claim 3 depends from claim 1 and recites that "the monitored communication traffic comprises packet traffic" and that the system includes "a Deep Packet Inspection (DPI) module … coupled to the behavioral information collector and operable to monitor the access communication traffic."  This claim simply recites a generic component that "implement[s]" the "collection function of the behavioral information collector."  (Ex. 1 at 6:36-38.)  A DPI module is nothing more than a well-known "generic computer element[]" for implementing the same abstract idea.  *Intell. Ventures I*, 792 F.3d at 1368.  Claim 3 recites the same abstract idea as claim 1.

Dependent claim 4 depends from claim 1 and recites that "the behavioral information collector is in an offline position relative to the access communication link."  This limitation does not alter the eligibility analysis.  Whether in the "online" or "offline" position, the behavioral information collector still performs the same function relative to the abstract idea.  That is, the behavioral information collector is directed to an abstract idea because the recited function of collecting information remains the same.  *See SAP*, 898 F.3d at 1168 (holding the collecting information relates to an abstract idea).

Dependent claims 5 and 13, which depend from claims 1 and 11, both recite that "the targeted electronic content comprises an advertisement."  These claims merely recite the type of targeted content—advertisements—being delivered to the user.  And that is the very same abstract idea that the Federal Circuit repeatedly has held is not patent eligible.

Dependent claim 6 depends from claim 1 and recites that "at least one of the behavioral information collector, the behavioral analyzer, and the electronic content delivery controller is

implemented in software for execution by one or more processing elements."  This limitation

only requires that one of the components be implemented as "software."  But the recited

functions for the generic components applying the abstract idea remain the same.

Dependent claim 7 depends from claim 1 and recites "implement[ation] in a set of one or

more network elements for providing to a subscriber system access to electronic content through

the access network."  This limitation merely requires generic network "elements" that provide

access to electronic content.  But adding additional generic computing equipment described in

functional terms does nothing to alter the fact that this claim is directed to an abstract idea.

Dependent claim 8 depends from claim 1 and recites that "one or more particular types of

communication traffic are indicated in an online characterization definition."  The "online

characterization definition" is merely an extension of how the collected user information is

analyzed using generic computer components.  The specification explains that the definitions

indicate "types of traffic or information" used to "maintain[] subscriber behavioral profile" such

as "URL, webpage context categorization, email traffic, [and] search phrase monitoring."  (Ex. 1

at 9:19-24.)  Using this type of user information to provide targeted content does not alter the

focus of the claim—collecting user data, analyzing that data, and providing targeted content.  As

such, the eligibility analysis of claim 1 applies to this claim.

Independent claim 9, like claim 1, is a system claim. Both claims are largely the same,

with the main differences being that claim 9 recites (a) "a memory operatively coupled to the

behavioral analyzer for storing behavioral analysis definitions," (b) that "the behavioral analyzer

maintains the subscriber behavioral profile by creating or updating the subscriber behavioral

profile in accordance with the stored behavioral analysis definitions," and (c) removes the

"implemented using hardware" limitation.  None of these differences changes the patentability

analysis directed to claim 1.  A generic component such as a "memory" does not confer patent eligibility.  *Free Stream*, 996 F.3d at 1358-59.

Independent claims 10 and 11, a  system and method claim respectively, recite the same components and same functionality as claim 1, using slightly different verbiage and ordering of limitations.  Nothing recited in claims 10 and 11 alters the applicability of the analysis for claim 1.  Both claims recite generalized functionality implemented in "hardware" to carry out the abstract idea of delivering targeted content.  Both claims also fail to recite significantly more than that abstract idea, as needed to get past *Alice* step 2.

Independent claim 14 recites "instructions" that "execute[] . . . a method."  The method (a) "monitor[s] communication traffic" from a source-of-content network operable for IPTV; (b) "collect[s]" "behavioral information" from that traffic; (c) "maintain[s] a behavioral profile"; and (d) "control[s]" delivery of content based on that profile from multiple sources.  Claim 14 essentially recites the same functions as in claim 1 performed by the same components via a claimed method.  The analysis as to claim 1 applies here too.

## V.   CONCLUSION

Google respectfully requests that this Court grant its motion for summary judgment[2] holding that the asserted claims of the '806 patent are invalid under 35 U.S.C. § 101.

---

[2]  Pursuant to the Court's guidance, Google understands that, because this motion for summary judgment is made under Section 101, the pages used for this motion do not count against the page limits otherwise set out for summary judgment motions.  Google relies upon the Patent FAQ - Pre-Trial, available at https://www.txwd.uscourts.gov/for-attorneys/judge-albright-courtroom-faq/ ("Q. If Defendant files a 101 motion, do those pages count against the page limits for summary judgment motions? A. No.").

Date: August 27, 2021

Respectfully submitted,

/s/ *Tharan Gregory Lanier with permission,*
*by Michael E. Jones*

Tharan Gregory Lanier (*pro hac vice*)
Jones Day
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter (Texas Bar No. 24036374)
Potter Minton, P.C.
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Sasha Mayergoyz
Jones Day
77 W. Wacker Drive
Chicago, IL 60601
+1 (312) 782-3939
smayergoyz@jonesday.com

Tracy A. Stitt
Edwin O. Garcia
Jones Day
51 Louisiana Avenue NW
Washington, DC 20001
+1 (202) 879-3641
tastitt@jonesday.com
edwingarcia@jonesday.com

Michael A. Lavine
Jones Day
555 California Street
26th Floor
San Francisco, California 94104
+1 (415) 626-3939
mlavine@jonesday.com

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

I certify that on August 27, 2021, I served the foregoing by electronic mail on counsel of record.

*/s/ Edwin Garcia*
Edwin O. Garcia