PUBLIC REDACTED VERSION

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

|  |  |  |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a, BRAZOS LICENSING AND DEVELOPMENT, | § § § § | |
| *Plaintiff,* | § § | Civil Case No. 6:20-cv-00572-ADA |
| v. | § § | JURY TRIAL DEMANDED |
| GOOGLE LLC, | § § § | ██████████████ |
| *Defendant.* | § § § | |

## MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT THAT CLAIM 3 IS PATENT INELIGIBLE UNDER SECTION 101

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

LEGAL STANDARD ................................................................................................................. 3

ARGUMENT ............................................................................................................................. 3

I.      JUST LIKE PATENT-INELIGIBLE CLAIM 1, CLAIM 3 COVERS THE
ABSTRACT IDEA OF DELIVERING TARGETED CONTENT TO USERS .............. 3

II.     RATHER THAN SUPPLYING ANY INVENTIVE CONCEPT, CLAIM 3
RECITES USING ADMITTEDLY "KNOWN," "EXISTING," AND
"COMMON" COMPONENTS TO IMPLEMENT AN ABSTRACT IDEA ................... 7

III.    PLAINTIFF'S EXPERT REPORT CONFIRMS THE ABSENCE OF ANY
GENUINE ISSUE OF MATERIAL FACT ................................................................... 11

CONCLUSION ......................................................................................................................... 15

## TABLE OF AUTHORITIES

Page

CASES

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)..................................................................................3

*Alice Corp. v. CLS Bank Int'l.*,
    573 U.S. 208 (2014)..................................................................................................7

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    967 F.3d 1285 (Fed. Cir. 2020)................................................................................8

*Austin v. Kroger Texas, L.P.*,
    864 F.3d 326 (5th Cir. 2017) ...................................................................................3

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)................................................................................7

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)..............................................................................11

*Bridge & Post, Inc. v. Verizon Comm'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) .............................................................4, 6, 9, 13

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
    No. 6:20-CV-00921-ADA, 2022 WL 4703425 (W.D. Tex. 2022)...........1, 9, 10, 11

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018)................................................................5, 7, 8, 13

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019).........................................................................14, 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)..............................................................................10

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020).....................................................................5, 6, 10

*Diamond v. Diehr*,
    450 U.S. 175 (1981)................................................................................................13

TABLE OF AUTHORITIES
(continued)

**Page**

*Elec. Power Grp., LLC v. Alstom S.A.*,
     830 F.3d 1350 (Fed. Cir. 2016)......................................................11

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
     60 F.4th 1349 (Fed. Cir. 2023) .......................................................9

*In re TLI Commc'ns LLC Pat. Litig.*,
     823 F.3d 607 (Fed. Cir. 2016).........................................................6

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
     850 F.3d 1332 (Fed. Cir. 2017)........................................................3

*Intell. Ventures I LLC v. Capital One Bank*,
     792 F.3d 1363 (Fed. Cir. 2015)........................................................4

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
     566 U.S. 66 (2012)..........................................................................1

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
     717 F.3d 929 (Fed. Cir. 2013)........................................................12

*Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*,
     2023 WL 193162 (Fed. Cir. 2023)...............................................9, 11

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
     65 F.4th 698 (Fed. Cir. 2023) .........................................................7

*SAP Am., Inc. v. InvestPic, LLC*,
     898 F.3d 1161 (Fed. Cir. 2018)........................................................7

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
     874 F.3d 1329 (Fed. Cir. 2017)........................................................8

*Yu v. Apple Inc.*,
     1 F.4th 1040 (Fed. Cir. 2021) .......................................................15

**STATUTES**

35 U.S.C. § 101.................................................................................. passim

TABLE OF AUTHORITIES
(continued)

Page

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54 ................................................................................................................3

*** Emphasis added throughout unless indicated otherwise.***

**** Deposition objections removed unless indicated otherwise**.

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1 | U.S. Patent 8,041,806 |
| 2 | 2023-03-30 Henry Houh Opening Report |
| 3 | 2023-06-08 Deposition of William. Mangione-Smith |
| 4 | Deposition Exhibit DX008 of William Mangione-Smith Deposition |
| 5 | Deposition Exhibit DX006 of William Mangione-Smith Deposition |
| 6 | 2023-04-28 Rebuttal Expert Report of Dr. William Mangione-Smith |

## INTRODUCTION AND SUMMARY OF ARGUMENT

This Court previously invalidated claims 1, 2, 5, and 7 of the '806 patent as ineligible under Section 101.  (Dkt. 143; 2/16/23 Hearing Tr. at 41:7-15).  The Court, however, denied cross-motions for summary judgment as to claim 3.[1]  (*Id.*)  Significantly, in the four months after the Court's ruling, the parties developed a thorough record completing fact discovery, exchanging expert reports, and conducting expert discovery.

The fully-developed record clearly demonstrates that there is no genuine issue of material fact that claim 3 is invalid under Section 101.  Plaintiff's expert report, the testimony from plaintiff's expert, and the prior art (including publications by plaintiff's own expert) decisively show that claim 3 merely recites common, pre-existing, and known components to perform the abstract idea of providing targeted content.  This new information, which was not before the Court during the February 2023 hearing, supports reconsideration of the Court's prior ruling.

This Court and the Federal Circuit consistently hold "patents directed to collecting information about a user's past behavior and providing content based on that information to be abstract and ineligible under § 101."  *Broadband iTV, Inc. v. Amazon.com, Inc.*, No. 6:20-CV-00921-ADA, 2022 WL 4703425, *11-12 (W.D. Tex. 2022) (analyzing over a dozen Federal Circuit and district court decisions).  By invalidating claim 1 as patent ineligible, this Court necessarily determined that the claim covers that same abstract idea.  Accordingly, the Supreme Court's basic inquiry is apt: "***What else is there*** in the claim[] before us?"  *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78 (2012).  The answer is nothing that can save dependent claim 3 from patent ineligibility.

---

[1]  The briefing for Google's summary judgment motion is at Dkt. 48, 50, and 55.  The briefing for plaintiff's summary judgment motion is at Dkt. 118, 127, 129, 131, and 132.

Claim 3, which depends from invalid claim 1, is directed to the same abstract idea of delivering targeted content.  Claim 3 does not recite anything rendering the claimed subject matter less abstract, nor does it recite any inventive concept.  Claim 3 simply states:

> The system of claim 1, wherein the monitored communication traffic comprises packet traffic, the system further comprising:
>
> a Deep Packet Inspection (DPI) module operatively coupled to the behavioral information collector and operable to monitor the access communication traffic.

(Ex. 1 at 16:47-52).  The recited "behavioral information collector" limitation was already held patent ineligible under claim 1.  Likewise, claiming "packet[s]" as a type of communication traffic is neither non-abstract nor inventive because packet traffic was well-known and common. (Ex. 2 at ¶¶ 119-20).

That leaves only recitation of a "Deep Packet Inspection (DPI) module."  Yet plaintiff's own expert admits that the inventors of '806 patent did not invent DPI; rather, "[i]t was a ***known concept*** that they were making use of."  (Ex. 3 at 27:11-14).  There is also no dispute that using DPI to monitor "packet traffic"—the specific type of "monitored communication traffic" recited in claim 3—was common, well-known, and commercially available.  As a prior-art reference in this case expressly teaches:

> [T]he inspection element ***monitors packet traffic*** in the communication system for an end user.  The inspection element can utilize ***common inspection technology such as deep packet inspection (DPI)*** which can analyze packet traffic….

(Ex. 4 at 3:29-58).  Plaintiff's expert concedes that DPI ***"was certainly known"*** and commercially available for monitoring packet traffic.  (Ex. 3 at 27:11-14, 48:12-15).  The '806 patent itself cements this understanding, explaining that a "DPI module used in behavioral information collection … might be ***an existing module*** that ***is also used for such functions*** as traffic management."  (Ex. 1 at 6:39-42).

With fact and expert discovery completed, the record establishes that claim 3 is a textbook example of reciting "well-understood, routine, conventional activity" to implement an abstract idea. *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017). This Court should grant summary judgment that claim 3 is patent ineligible.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise at any time' 'any order or other decision … that does not end the action.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* at 336. Google's prior briefing provided the legal standards for summary judgment and Section 101. (Dkt. 48 at 9).

## ARGUMENT

## I.  JUST LIKE PATENT-INELIGIBLE CLAIM 1, CLAIM 3 COVERS THE ABSTRACT IDEA OF DELIVERING TARGETED CONTENT TO USERS

"[T]ailoring of content based on information about the user … is an abstract idea that is as old as providing different newspaper inserts for different neighborhoods." *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016). Here, from start to finish, the '806 patent is directed to the same abstract idea of delivering targeted content to users. The '806 patent is titled "Targeted Electronic Content Delivery Control Systems And Methods." (Ex. 1). The first sentence of the Abstract states that "[t]argeted electronic content delivery systems and methods are disclosed." (*Id.*) The "Summary of The Invention" section describes that "***present invention*** may significantly improve an advertiser's return on investment … ***by***

3

***delivering highly relevant targeted online advertisements*** … using continuous and thorough analysis of the consumers' online behaviors." (*Id.* at 2:37-42).

The rest of the '806 patent does not describe any improvement to the underlying technology—such as an enhanced DPI module or better packet traffic—for delivering targeted content. Instead, the '806 patent demonstrates that its focus is on improving the targeted content by using "familiar" and "existing" components. As the beginning of the "Detailed Description of Preferred Embodiments" section makes clear:

> Those ***skilled in the art*** to which the present invention pertains ***will be familiar with many different types*** of subscriber systems access communication networks, and core communication networks. The ***present invention is not limited to any particular type of subscriber or network equipment***.

(*Id.* at 4:62-67). The patent again states that "many examples of subscriber, access network, and core network technologies and their operation ***will be familiar*** to those skilled in the art." (*Id.* at 5:24-26). The '806 patent also explains that "[s]ince the present invention ***is not limited to any particular types of*** equipment, protocols, or operation, subscriber and network equipment are ***described only to the extent necessary to illustrate embodiments*** of the invention." (*Id*. at 5:26-30). And the '806 patent instructs that the DPI module can "be ***an existing module***" already used for "functions as traffic management." (Ex. 1 at 6:39-42). These passages demonstrate that any advancement covered by claim 3 is not related to improving computer technology itself because the patent is expressly agnostic about the underlying technology. The language of claim 3 confirms this understanding.

The Federal Circuit holds that "claims related to customizing information based on (1) information known about the user and (2) specific data ***are directed to abstract ideas***." *Bridge & Post*, *Inc. v. Verizon Comm'ns, Inc.*, 778 F. App'x 882, 888 (Fed. Cir. 2019); *see Intell. Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[T]ailoring the information

presented to the user based on that [user's] information is another fundamental practice long prevalent in our system."). This Court already held that independent claim 1 is patent ineligible, and necessarily recites the abstract idea of providing targeted content. Thus, to qualify as a patent-eligible improvement, "the focus" of claim 3 must be "on a specific asserted improvement in computer capabilities" rather than "invok[ing]" computers "merely as a tool" to implement the abstract idea. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018). Nothing recited in claim 3 removes it from the realm of an abstract idea.

The only difference between invalid claim 1 and claim 3 is that the latter specifies packet traffic as the type of network traffic and adds a deep packet inspection module to monitor packet traffic to accomplish the abstract idea of providing targeted content. None of this constitutes "an improvement to computer functionality." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) ("[I]t is not enough, however, to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool.").

Specifying packet traffic as a particular type of "monitored communication traffic" cannot escape the abstractness of claim 1. A "claim is not patent eligible merely because it applies an abstract idea in a narrow way. For an application of an abstract idea to satisfy step one, the claim's focus must be something other than the abstract idea itself." *BSG*, 899 F.3d at 1287. Thus, while claim 3 "cover[s] a narrower range … than claim 1, the claim's focus remains on the abstract idea." *Id.* at 1287 n.1. Similarly, claim 3's recitation of a "behavioral information collector" is legally irrelevant to the abstract-idea issue because claim 1 recites that limitation.

Nor does claiming a DPI module coupled to the behavioral information collector to monitor packets constitute a technological improvement. Nothing in claim 3 provides for any

improvement to the DPI technology itself.  Instead, claim 3 simply identifies using DPI in its ordinary capacity (monitoring packet traffic) as a tool for implementing the abstract idea.  Using an "existing" DPI module, as contemplated by the '806 patent (Ex. 1, 6:39-42), "is merely a conduit for the abstract idea" of providing targeted content.  *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).  The Federal Circuit holds that claims directed to "tracking [of] a user's computer network activity and using information gained about the user to deliver targeted media" is an abstract idea.  *Bridge & Post*, 778 F. App'x at 884.  Claim 3 is no different.

Plaintiff's assertion that claim 3 provides an "improved targeted electronic content delivery system" fails to distinguish claim 3 from invalid claim 1.  (Ex. 6 at ¶ 107).  The Federal Circuit's decision in *Customedia* is instructive.  There, the court recognized that, as in this case, "[n]ot infrequently, patentees … ***latch on to th[e] language*** from *Alice* and claim that their claims do 'improve the functioning of the computer itself.'"  951 F.3d at 1362.  As here, the patentee in *Customedia* argued "that its claims are eligible because they 'provide for improvements to the operation and functioning of computer systems.'"  *Id.*  Rejecting that argument, the Federal Circuit explained that the claims "are directed to the abstract idea of using a computer to deliver targeted advertising to a user, not to an improvement in the functioning of a computer."  *Id.* at 1362-63.  The court further reasoned that:

> Even if we accept [patentee's] assertions, the claimed invention merely improves the abstract concept of delivering targeted advertising using a computer ***only as a tool***.  This is not what the Supreme Court meant by improving the functioning of the computer itself nor is it consistent with our precedent applying this concept.

*Id.* at 1363.  The same reasoning leads to the same conclusion here.

## II.   RATHER THAN SUPPLYING ANY INVENTIVE CONCEPT, CLAIM 3 RECITES USING ADMITTEDLY "KNOWN," "EXISTING," AND "COMMON" COMPONENTS TO IMPLEMENT AN ABSTRACT IDEA

Under *Alice* step 2, patentability requires that the claimed combination of elements amount to "significantly more than a patent upon the ineligible concept itself." *Alice Corp. v. CLS Bank Int'l.*, 573 U.S. 208, 218 (2014).  Claim 3 cannot meet this standard because it does not recite anything "more," let alone something "significantly more," than implementing the abstract idea of delivering targeted content.  *Id*. at 218.

Step two "looks more precisely at what the claim elements add" to determine if "they identify an inventive concept in the application of the ineligible matter to which ... the claim is directed."  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."  *BSG*, 899 F.3d at 1290-91.  Nothing in claim 3 supplies an inventive concept that improves DPI technology or packet traffic.  Instead, claim 3 simply recites the delivery of targeted content "using common computer components."  *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023).  Uncontroverted evidence from the prior art, the '806 patent itself, and testimony from plaintiff's own expert definitively establishes this point.

Claim 3's recitation of "packet traffic" as a particular type of "communication traffic" cannot supply an inventive concept because "[a]s a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."  *BSG*, 899 F.3d at 1291.  An "abstract idea on 'an Internet computer network' ... is still an abstract idea."  *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016).

Similarly, the recitation of a "behavioral information collector" adds nothing under *Alice* step 2 because invalid claim 1 already recites a "behavioral information collector."  Simply put, the "[t]he abstract idea itself cannot supply the inventive concept."  *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1299 (Fed. Cir. 2020).  "It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."  *BSG*, 899 F.3d at 1290.

Recitation of a deep packet inspection module is all that remains in claim 3.  The evidence here indisputably establishes that using DPI to monitor packet traffic was well known and commercially available before the '806 patent.  First, the prior-art U.S. Patent No. 10,181,135 ("the prior-art Ou reference") explicitly teaches that using deep packet inspection to assess a user's behavior was "common":

> The inspection element can utilize ***common inspection technology such as deep packet inspection (DPI)*** which can analyze packet traffic from any layer in an Open Systems Interconnection (OSI) model such as packet headers and payloads ***to assess the behavior of a target end user***….

(Ex. 4 at 3:33-37; *see* Ex. 5 at 1 (prior-art article explaining that: "Most of the ***currently available deep packet inspection systems*** use one or more general purpose processors….").

While "[e]ligibility and novelty are separate inquiries," *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017), it is telling that plaintiff's own expert does not dispute that the prior-art Ou reference discloses all the limitations recited in claim 3:

> Q:  In your rebuttal report, you do not offer any opinion rebutting Dr. Houh's invalidity analysis that the prior art Ou reference discloses the language of Claim 3; correct?
>
> A. [I]t appears, based on my review here … ***I am focusing on Claim 1*** as it forms the basis, I guess I would say, or the structure of Claim 3, ***but not the DPI elements of Claim 3 directly.***

8

(Ex. 3 at 61:24-62:7).

Second, the '806 patent itself describes DPI as a known and pre-existing technology, stating that a "DPI module used in behavioral information collection … might be **an existing module** that is also used for such functions as traffic management." (Ex. 1 at 6:39-42). The '806 patent further "reinforces the fact that the claim [3] implements its abstract idea through 'well-understood, routine, conventional components.'" *Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, 2023 WL 193162, at *3 (Fed. Cir. 2023). The '806 patent directs that "many examples of subscriber, access network, and core network technologies and their operation **will be familiar to those skilled in the art**." (Ex. 1, 5:24-26). The '806 patent also explains that "**[t]hose skilled in the art** to which the present invention pertains **will be familiar with many different types** of subscriber systems, access communication networks, and core communication networks." (*Id.* at 4:62-65). Indeed, the '806 patent provides no detail that packet traffic and the DPI module in claim 3 operate in an unconventional or unknown manner.

Presented with disclosures closely resembling these statements in the '806 patent, courts repeatedly hold that the patent itself establishes that the claimed components were well known and conventional. *See Broadband iTV*, 2022 WL 4703425, at *13 (claims failed *Alice* step 2 because the "patent admits that tracking systems that collect users' viewing history were 'conventional'"); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) (claims failed step 2 when "patent itself confirms that the invention is meant to 'utiliz[e] **existing** broadband media and **other conventional technologies**'"); *Riggs*, 2023 WL 193162, at *3 (claims failed step 2 because patent stated that "[t]hose skilled in the art can appreciate that **a variety of possible** … networking configurations can be utilized"); *Bridge & Post*, 778 F. Appx'x at 891 (claims failed step 2 when the "specification confirms that the claimed hardware … **can**

be '*any* digital device capable of communications over the network'" and use "*existing* persistent identifiers"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (no inventive concept when claims recited use of "*existing* scanning and processing technology").  These results follow from the basic rule that "invocation of already-available computers that are not themselves plausibly asserted to be an advance ... amounts to a recitation of what is well-understood, routine, and conventional." *Customedia*, 951 F.3d at 1366 (claims failed step 2 when "specification acknowledges that the storage device 'may be any storage device … known in the art'").  The same outcome applies here.

Third, plaintiff's expert confirmed that the inventors of the '806 patent did not invent deep packet inspection; rather "it was *a known concept* that they were making use of."  (Ex. 3 at 27:11-14.)  Plaintiff's expert also acknowledged that DPI "*was certainly known*" and "*[i]t was available*" before the '806 patent.  (*Id.* at 37:22-38: 9.)  Plaintiff's expert further admitted that DPI systems for monitoring network packet traffic (as recited in claim 3) were commercially available:

> Q.  Sir, as of 2004, deep packet inspection systems were commercially available
> for monitoring network packet traffic; correct?
>
> A.  Yes, they were.

(*Id.* at 48:12-15; *see id.* at 47:4-48:1, 46:22-47:1 (testifying that his prior-art article describes using DPI to monitor packet traffic from the Internet)).  Plaintiff's expert also conceded that DPI systems implemented in open source software for monitoring packet traffic were "widely known and widely discussed" before the '806 patent.  (*Id.* at 51:9-53:10).

As this Court recognizes, "[s]uch admissions preclude any factual dispute as to whether a [DPI module] is conventional at *Alice* step two."  *Broadband iTV*, 2022 WL 4703425, at *17

(granting summary judgment under Section 101 and noting inventor's and expert's admissions that claimed components were "available 'off the market'"); *see Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (holding various claims ineligible given inventor's admissions that "parsers and the functions they perform existed for years before his patent"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (holding no inventive concept because "[n]othing in the claims … requires anything other than off-the-shelf, conventional computer network … technology").

Even as an ordered combination, claim 3 lacks something "significantly more."  Rather, the limitations of claim 3 recite no more than a computer implementation of the abstract idea of using DPI and packet traffic to implement delivery of targeted content.  In sum, "nothing in the '[806] patent suggests that the patentee intended to accomplish any of the steps recited in [] claim [3] through anything other than well-understood technology used in a routine and conventional manner.  Thus, [] claim [3] lacks an inventive concept." *Riggs*, 2023 WL 193162, at *4.

Accordingly, "when there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, patent eligibility can be decided on summary judgment as a matter of law." *Broadband iTV*, 2022 WL 4703425, at *2.  This is precisely such a case.

## III.   PLAINTIFF'S EXPERT REPORT CONFIRMS THE ABSENCE OF ANY GENUINE ISSUE OF MATERIAL FACT

Regarding *Alice* step 2, plaintiff's expert report offers three paragraphs spanning less than a page.  (Ex. 6 at ¶¶ 108-110; Ex. 3 at 74:13-15).  One paragraph simply states his understanding of the legal standard.  (Ex. 6 at ¶ 108; Ex. 3 at 74:19-75:7).  The other two paragraphs provide a string of conclusory opinions and statements without any analysis, explanation, or evidentiary

citation.  Such "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment."  *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 941 (Fed. Cir. 2013).

In paragraph 109, plaintiff's expert states the following:

> 109. **[1]** If it is argued that claim 3 is directed to an abstract idea, it is my opinion that claim 3 has additional elements and ordered combination of elements that are not routine, conventional, or well-understood.  **[2]** Claim 3 recites the additional elements of a behavioral information collector and a DPI module that were not routine, convention, or well-understood in the field of the invention.  **[3]** As I noted above, prior targeted electronic content delivery systems deposited cookies onto user devices and did not use behavioral information collectors or DPI modules to build behavioral profiles.  **[4]**  The use of a behavioral information collector and DPI module for behavioral profiling was not routine, conventional, or well-understood as of 2006.

(Ex. 6 at ¶ 109 (bracketed numbers added)).  Nothing in this paragraph raises a triable issue of fact.  Rather, the paragraph states and restates the same conclusion with slightly different verbiage but fails to provide any supportive reasoning or evidence for that conclusion.

Plaintiff's expert admits that the first sentence in paragraph 109 simply states his conclusion.  (Ex. 3 at 75:17-20 ("Q.  [T]he first sentence of paragraph 109 states your conclusion that Claim 3 satisfies the second step of the patent eligibility analysis; correct?  A.  Yes, as I understand that second step.")).  In the second and fourth sentences, the expert twice restates the same conclusion by inserting the claim limitations "behavioral information collector" and "DPI module."  As explained above, however, patent-ineligible claim 1 already recites a "behavioral information collector" and that limitation cannot save claim 3.  As also explained above, plaintiff's expert conceded that DPI systems were "certainly known," commercially available, and freely available through open-source software before the '806 patent.  *See* Section II.

That leaves the third sentence in paragraph 109, which is irrelevant as a matter of law for several reasons.  <u>First</u>, the sentence assumes that claim 3 covers a system that does not use

"cookies."  But nothing in claims 1 or 3 recites any language that the claimed system does not deposit cookies.  Moreover, as the Federal Circuit held in *Bridge & Post*, claiming a computerized targeted content delivery system that eliminates "cookie-based tailoring" and instead "track[s] [user] data" by a different approach does not provide anything "significantly more" than a claim upon the ineligible concept itself.  778 Fed. Appx. at 884-85, 891 (quoting *Alice*).

Second, the sentence erroneously conflates novelty with patent eligibility. As the Supreme Court has long guided, "[t]he '***novelty***' of any element or steps in a process, or even of the process itself, ***is of no relevance*** in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."  *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981).  Step 2 "only assesse[s] ***whether the claim limitations other than*** the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional."  *BSG*, 899 F.3d at 1290.  Rejecting the same type of argument that plaintiff raises here in the same context of claims for delivering targeted content, the Federal Circuit explained:

> [Patentee] argues that the "intercepting" limitation "functions differently than prior art targeted content delivery systems."  ***That is not the test for eligibility***.  At *Alice* step two we assess whether the claim limitations <u>other than</u> the invention's use of the ineligible concept to which it was directed were well-understood, routine, and conventional.

*Bridge & Post*, 778 F. App'x at 892 (underline is original emphasis).  The same reasoning compels the same result here.

Third, as explained above, plaintiff's expert conceded in his deposition that the prior-art Ou reference discloses all the limitations of claim 3.  (Ex. 3 at 61:24-63:14).

In paragraph 110, plaintiff's expert states the following:

> Additionally, claim 3 recites an unconventional arrangement of elements with the behavioral information collector and DPI module being remote from the user device.  This unconventional arrangement enables improved communication traffic sampling and lessens computational resource usage of at [sic] the user device.  This recited location of the DPI module and behavioral information collector was not routine, conventional, or well-understood in the field of the invention.

(Ex. 6 at ¶ 110).  Like paragraph 109, nothing in paragraph 110 raises a triable issue of fact.  The entirety of this paragraph hinges on the premise that claim 3 "***recites*** … the behavioral information collector and DPI module being remote from the user device" and that the "***recited*** location … was not routine, conventional, or well understood."  (*Id.*)  This premise fails as a matter of law for several reasons.

First, nothing in claim 3 (or claim 1) actually recites the behavioral information collector or the DPI module as being "remote."  That requirement appears nowhere in the claim language, and plaintiff's expert does not identify anything in the claims.  In fact, plaintiff's expert concedes that the only support he cites for the remote location of these two components (in paragraph 107, footnote 88) appears exclusively in the specification, not in the claim language.  (Ex. 3 at 105:22-106:18; Ex. 6 at ¶ 107 n.88).  Moreover, the only passage in the specification cited by the expert (column 5, lines 44-51) relates to "system 20," and the '806 patent expressly that "[i]t ***should be appreciated*** that the system 20 represents ***one illustrative example of an embodiment*** of the invention.  Other embodiments may include … ***different interconnections than shown***."  (Ex. 1, 6:12-16).  Accordingly, nothing in the claims recite, and nothing in the specification requires, that these components be remote from the subscriber device.

Second, courts uniformly reject similar arguments attempting to avoid patent ineligibility based on features not recited in the claim language.  The "§ 101 inquiry ***must focus*** on the language of the Asserted Claims themselves."  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d

759, 769 (Fed. Cir. 2019).  Thus, "[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the … abstract idea underlying the claims."  *Id*.  Soo to here.  The Federal Circuit's reasoning in *Yu v. Apple Inc.* is instructive and decisive in this case.  In *Yu*, the court observed that "[t]he main problem that [plaintiff] cannot overcome is that the claim—as opposed to something purportedly described in the specification—is missing an inventive concept."  1 F.4th 1040, 1045 (Fed. Cir. 2021).  The court went to explain:

> In these circumstances, the mismatch between the specification statements that [plaintiff] points to and the breadth of claim 1 ***underscores that the focus of the claimed advance is the abstract idea and not the particular configuration discussed in the specification that allegedly departs from the prior art***.

*Id*.  This reasoning applies with full force and defeats plaintiff's similarly legally erroneous argument.

<u>Third</u>, even if plaintiff's argument regarding the location of the behavioral information collector and DPI module had any merit (and it does not), it would not save the claim 3. Under plaintiff's approach, claim 1 would necessarily require the claimed "behavioral information collector" to be remote from the subscriber.  That failed to avoid patent ineligibility for claim 1, and it cannot do so for claim 3 for the same reasons.

Finally, plaintiff's expert provides three paragraphs addressing *Alice* step 1.  (Ex. 6 at ¶¶ 105-107; Ex. 3 at 74:10-12.)  The issue of whether a claim covers an abstract idea is a pure question of law on which the expert's declaration cannot raise a triable issue of fact.

<u>**CONCLUSION**</u>

For the reasons above, Google respectfully requests that this Court grant summary judgment that claim 3 is patent ineligible under Section 101.

Date:  June 28, 2023                    Respectfully submitted,

                                        */s/  T. Gregory Lanier, with permission by*
                                        *Shaun W. Hassett*
                                        Michael E. Jones (SBN: 10929400)
                                        Shaun W. Hassett (SBN: 24074372)
                                        **Potter Minton, P.C.**
                                        102 North College, Suite 900
                                        Tyler, Texas, 75702
                                        +1 (903) 597-8311
                                        +1 (903) 593-0846 facsimile
                                        mikejones@potterminton.com
                                        shaunhassett@potterminton.com

                                        T. Gregory Lanier (*pro hac vice*)
                                        **Jones Day**
                                        1755 Embarcadero Road
                                        Palo Alto, California, 94303
                                        +1 (650) 739-3939
                                        +1 (650) 739-3900 facsimile
                                         tglanier@jonesday.com

                                        I. Sasha Mayergoyz (*pro hac vice*)
                                        **Jones Day**
                                        77 West Wacker Drive
                                        Chicago, IL 60601-1692
                                        smayergoyz@jonesday.com

                                        *Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2023.

                                        */s/ Shaun W. Hassett*

16